Maria Socorro **DELGADO–COREA** and **Aminta Espino-Delgado, Petitioners,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

**No. 85–1582.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 3, 1985.

Decided Oct. 20, 1986.

Barbara K. Strack (Richard G. Parker, O'Melveny & Myers, on brief), for petitioners.

Joan E. Smiley, Office of Immigration Litigation, Civ. Div., Dept. of Justice (Richard K. Willard, Acting Asst. Atty. Gen., Dawn MacPhee, Assistant Director, Millicent Y. Clark, on brief), for respondent.

Before WIDENER and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

WIDENER, Circuit Judge:

Maria Socorro Delgado-Corea and her daughter, Aminta Espino-Delgado, seek review of an order of the Board of Immigration Appeals dismissing their appeal from the decision of an immigration judge finding them deportable and ordering that they be deported back to Nicaragua. Mrs. Delgado and her daughter claim that the Immigration and Naturalization Service (INS) violated its own regulations by not providing them with a list of free legal services available for the place where the deportation hearing was to be held. The INS concedes that the regulation in question was violated when Mrs. Delgado and her daughter were provided lists of attorneys available in Tucson, Phoenix, and San Diego rather than a list for Los Angeles where their hearing was conducted. The INS argues, however, that Mrs. Delgado and her daughter have shown no prejudice result-

ing from their receiving the wrong list of attorneys so that the Board's action should be affirmed. We agree with the INS and deny the petition.

Mrs. Delgado and her daughter are natives and citizens of Nicaragua. They entered the United States in November 1983 without inspection by border officials in violation of 8 U.S.C. § 1251(a)(2). Shortly thereafter, they were apprehended by border officials and taken to Tucson, Arizona. Show cause orders were issued notifying Mrs. Delgado and her daughter that their deportation hearing would be held in Los Angeles, California. While in Tucson, Mrs. Delgado and her daughter were provided lists of free legal services available in Tucson, Phoenix, and San Diego.

A joint deportation hearing was held in Los Angeles on November 29, 1983. Mrs. Delgado and her daughter appeared pro se. The immigration judge questioned the two about proceeding without counsel. The following is that colloquy:

Q. The purpose of this hearing is to determine whether or not you should be deported from the United States. Do you both understand?

A. Yes (by both).

Q. At this hearing you have the right to be represented by an attorney or some other person authorized to appear before the Service. Have either of you retained anyone to represent you at this hearing?

A. We will go on.

Q. You mean you want to go ahead without an attorney. Is that what you're saying?

A. Yes.

JUDGE:

Ms. Jambor, were these people given lists of legal services?

MS. JAMBOR:

They were both given lists, your Honor.

JUDGE:

Both given lists; all right. Oh, I notice on the backs of the Orders to Show Cause they were given lists, too.

At the hearing, both Mrs. Delgado and her daughter admitted deportability and chose Nicaragua as their country of deportation. Following the hearing, the immigration judge issued his order of deportation for the two.

Following that hearing, Mrs. Delgado and her daughter obtained legal representation. They appealed the deportation order to the Board of Immigration Appeals, claiming error in the INS' failure to provide them with a list of legal services available in Los Angeles. They claimed that they were denied their right to seek political asylum because they did not have an attorney at their hearing.

The Board of Immigration Appeals affirmed the action of the immigration judge after concluding that Mrs. Delgado and her daughter had shown no prejudice from failure to receive the correct list of legal services since they waived their right to counsel.

■ An alien has the privilege of legal representation at a deportation hearing at no expense to the government.[1] 8 U.S.C. § 1252(b), see generally 8 U.S.C. § 1362. An alien, however, is not entitled to have counsel appointed at government expense to represent him at the hearing. *United States v. Gasca-Kraft*, 522 F.2d 149 (9th Cir.1975). INS regulations provide that an alien "shall be advised of the availability of free legal services programs ... located in the district where his deportation hearing will be held." 8 C.F.R. § 242.1(c).

Both sides agree that INS violated § 242.1(c) by providing the Delgados with the wrong list of legal services. The question to be decided is what effect such a violation has in this case. Initially, Mrs. Delgado and her daughter claim that such a violation alone is enough to warrant the granting of a new hearing under the authority of *United States v. Calderon-Medi-*

---

1. Unlike a criminal defendant, however, an alien does not have a right to counsel arising under the Sixth Amendment to the Constitution. *Barthold v. U.S. Imm. & Nat. Serv.*, infra.

*na,* 591 F.2d 529 (9th Cir.1979), and *In re Garcia-Flores,* 17 I & N Dec. 325 (BIA 1980).

Appellants' reliance upon these cases for the proposition that prejudice need not be shown is misplaced. In *Calderon-Medina,* the aliens claimed that deportation orders against them should be set aside because the INS violated a regulation that required the alien to be notified that he may communicate with the diplomatic officer of the country of his nationality. The district court had agreed. It concluded that the deportation orders were invalid because the INS violated its own regulations and that the alien need not show prejudice in such a case.

The Ninth Circuit reversed. That court found that violation of a regulation can serve to invalidate a deportation order when the regulation serves a purpose to benefit the alien. Such a violation, however, will invalidate the deportation order "only if the violation prejudiced interests of the alien which were protected by the regulation." *Calderon-Medina,* supra at 531.

The Board of Immigration Appeals relied upon *Calderon-Medina* when it decided *In re Garcia-Flores.* In that case, the alien challenged the introduction of an incriminating statement at her deportation hearing on the ground that the immigration officer who took the statement had not advised her of her right to an attorney during questioning, in violation of 8 C.F.R. 287.3. The Board adopted the prejudice test of *Calderon-Medina* and remanded the matter to allow the alien to demonstrate prejudice arising from the immigration officer's actions. In reaching its conclusion, the Board said "[w]here compliance with the regulation is mandated by the Constitution, prejudice may be presumed. Similarly, where an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency, it can be deemed prejudicial. [Citations omitted.] As a general rule, however, prejudice will have to be specifically demonstrated." *Garcia-Flores,* supra at 329.

It is important to note that the Board refused to presume prejudice from the violation of the regulation in *Garcia-Flores.* While that case would allow such a presumption of prejudice in certain cases, it does not require it. The Board in the instant case correctly concluded that as a general rule prejudice must be shown by the alien. The Board affirmed the deportation order specifically because Mrs. Delgado and her daughter were unable to show prejudice. We find no error in the reasoning or conclusion of the Board regarding the prejudice requirement.

■ Mrs. Delgado and her daughter argue that even if prejudice is required, they successfully proved it. We disagree for two reasons. First, no prejudice is shown because the Delgados waived their right to have counsel present. While the immigration judge was misadvised during his questioning that the Delgados had been supplied the proper list of attorneys, the record reveals no facts from which we could conclude that the Delgados did not understand the judge's questions nor did not voluntarily choose not to have counsel present. An alien can choose to waive counsel and such a waiver will be upheld if voluntarily given. *Barthold v. U.S. Immigration and Nat. Serv.,* 517 F.2d 689 (5th Cir.1975). We therefore find that the Board correctly found that no prejudice was present because Mrs. Delgado and her daughter waived having counsel present at the hearing.

Additionally, we reject the Delgados' claim that they were prejudiced by want of an attorney in that they were deprived of their right to petition for asylum. However, they have not presented sufficient grounds upon which asylum could be granted. The Delgados seek asylum based upon the conscription of two of Mrs. Delgado's children into the Nicaraguan military. She desires to protect her daughter from also being drafted to work in a camp harvesting the coffee and cotton crops and possibly being forced into military service. The Delgados presented a *New York Times* article to support their belief that the Nicara-

guan government may begin drafting young girls into the military. At oral argument, the Delgados claimed they oppose the Sandanista government. Such generalized fear does not rise to the level necessary for granting political asylum, that being the alien's well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion directed against him as an individual. 8 U.S.C. 1101(a)(42)(A), 1158; 8 C.F.R. 208.5 *Espinoza-Martinez v. I.N.S.*, 754 F.2d 1536 (9th Cir.1985).[2]

The petition for review is accordingly DENIED.

BUTZNER, Senior Circuit Judge, dissenting:

The decisive fact in this appeal is that Mrs. Delgado and her 15–year-old daughter were not given information about free legal assistance available to them in Los Angeles, the site of their deportation hearing, as required by law. 8 C.F.R. § 242.1(c). The government's attorney mistakenly told the immigration judge, in answer to his inquiry, that the Delgados had been furnished the list of attorneys required by the regulations. Having received this misinformation, the judge proceeded with the hearing. It is unlikely that he would have done so if he had been correctly advised, for surely he had some purpose in asking whether the Delgados had been provided the list to which they were entitled.

The Board of Immigration Appeals recognized that the violated regulation "is an integral part of a procedural framework designed to insure a fair deportation hearing...." Nevertheless, it held that the Delgados were not prejudiced because they waived their right to counsel at the deportation hearing.

2. Mrs. Delgado and her daughter may still have an avenue available to them if they wish to petition the government for political asylum. Under 8 C.F.R. § 208.11 an alien can under certain circumstances request asylum after completion of the deportation process.

3. In support of its ruling the Board cited *Matter of Santos,* Interim Decision 2969 (BIA June 26, 1984), which, however, does not support the

In order to be valid, the Delgados' waiver must have been "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The sound principle of *Johnson v. Zerbst* is expressly made applicable to immigration proceedings. "[M]eticulous care must be exercised to insure that a waiver of this right is competently and understandingly made." *Matter of Guttierez,* 16 I & N Dec. 2587 at 228 (BIA 1977). The purpose of the regulation in question is to assure that any waiver of counsel is made knowingly and intelligently. The Delgados' acquiescence in proceeding without counsel at their deportation hearing was not an intelligent relinquishment of a known right because they were not advised that they, as indigents, had access to free legal advice in the city where their hearing was conducted.

The immigration judge made no finding that the Delgados knew free legal advice was available to them in Los Angeles. He merely relied on the government attorney's mistaken assurance that they had been furnished the necessary information. The Board, of course, conducted no hearing to determine the extent and nature of the Delgados' knowledge about the availability of free legal advice. It ruled on the basis of abstract principles without any factual foundation. Its ultimate conclusion was stated as follows: "The failure to receive the correct list of free legal services is without significance given the waiver of counsel."[3] The flaw in this reasoning is the lack of proof that the waiver was competently and understandingly made with knowledge of the existence of free legal services in Los Angeles.

conclusion that the Delgados' waiver was valid. Santos, in contrast to the Delgados, was given information about the existence of free legal assistance and the address of "Legal Aid" before his deportation hearing. Consequently, the Board concluded he was not prejudiced by the immigration judge's failure personally to advise him of the availability of legal services.

The Delgados also claim that they were prejudiced because without counsel's assistance they were unable to present their asylum claim at the deportation hearing. The government urges us to reject this argument on the ground that the Delgados have not presented on appeal sufficient grounds on which asylum could be granted.

It is inappropriate for this court to evaluate a potential claim for asylum which for lack of counsel was not presented at a deportation hearing.[4] Our review of the Board's decisions is limited to the administrative record on which the deportation order is based. 8 U.S.C. § 1105(a)(4). The government's argument wrongfully suggests that this court should decide an issue that Congress left in the first instance to the Attorney General. *See* 8 U.S.C. § 1158. It is possible that with appropriate legal guidance, the Delgados would have presented a successful petition for asylum to avoid being subjected to the current government of Nicaragua. Other courts, albeit in other contexts, have recognized the importance of affording an alien a reasonable opportunity to present a claim for asylum. *See, e.g., Leung v. INS,* 531 F.2d 166, 168 (3d Cir.1976); *Kovac v. INS,* 407 F.2d 102, 108 (9th Cir.1969). Because the outcome of the deportation proceeding could have been different had the Delgados been afforded an opportunity to consult an attorney in accordance with 8 C.F.R. § 242.1(c), they are entitled to a new hearing. *Partible v. INS,* 600 F.2d 1094, 1096 (5th Cir.1979).

I respectfully dissent.

4. Section 208.10 of 8 C.F.R. provides that a request for asylum in a deportation hearing shall be made on form I–589. When the form is filed, the hearing must be adjourned for the purpose of requesting an advisory opinion from the Bureau of Human Rights and Humanitarian Affairs of the Department of State. Because the court is not privy to the State Department's information about the practices of the present Nicaraguan government, I cannot confidently predict that an advisory opinion would recommend denial of asylum to the Delgados.