Noel MOLAIRE, Petitioner,

v.

Richard SMITH, Acting District Director, Immigration and Naturalization Service, District No. 6, Respondent.

No. 89–2019–CIV–EPS.

United States District Court, S.D. Florida.

July 16, 1990.

Cheryl Little, Esther Cruz, Ira J. Kurzban, Miami, Fla., for petitioner.

Dexter Lee, Asst. U.S. Atty., Miami, Fla., for respondent.

## MEMORANDUM OPINION

SPELLMAN, District Judge.

ORDER GRANTING PETITIONER'S AMENDED HABEAS PETITION, VACATING ORDER OF EXCLUSION AND DEPORTATION, AND REMANDING CAUSE TO IMMIGRATION COURT FOR RE–HEARING

THIS CAUSE comes before the Court upon the Petitioner Noel Molaire's (a/k/a Louissant Himmler, Jr.) initial Habeas Petition and Amended Habeas Petition filed with this Court on September 22, 1989 and October 13, 1989 respectively, from a final order of the Board of Immigration Appeals (hereinafter the "Board") dated September 26, 1989, dismissing Petitioner's Motion to Reopen. For the reasons set forth below, this Court finds the Board abused its discretion, vacates the immigration court's order of exclusion and deportation, and remands this cause to the immigration court for re-hearing.

## JURISDICTION

Section 106(a) of the Immigration and Nationality Act (hereinafter the "INA"), 8 U.S.C. §§ 1105a(a)(9) and 1105a(b), confers upon this Court jurisdiction to review final orders of exclusion and deportation.

## VENUE

Pursuant to Section 106(a)(2) of the INA, 8 U.S.C. § 1105a(a)(2), venue is properly before this Court as the administrative proceedings in the instant cause were conducted in Miami, Florida.

## STANDARD OF REVIEW

A district court is to conduct a *de novo* review of the Board's conclusions of law. *Coriolan v. INS,* 559 F.2d 993 (5th Cir. 1977)[1]. However, decisions of the Board whether to reopen and reconsider deportation proceedings may only be set aside for abuse of discretion. *Yee Dai Shek v. INS,* 541 F.2d 1067 (4th Cir.1976).

## FACTS

Petitioner is a native and citizen of Haiti. On October 17, 1988, Petitioner arrived at Miami International Airport on board Eastern Airlines flight number 950 from Port-au-Prince, Haiti. Petitioner applied for admission to the United States as a non-immigrant visitor, presenting a Haitian passport in the name of Louissant Himmler, Jr.. Preliminary examination of the passport

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

indicated the photograph had been switched. In a sworn statement, Petitioner claimed the passport was his, that he obtained it himself, and that he had never done anything to the passport.

Petitioner was asked his purpose for coming to the United States, whereupon he replied "My mother has some merchandise here and I came to pick it up." When asked if he had anything else to add to this statement, Petitioner said "No, all I'm coming for is to pick up my mother's merchandise."

Because Petitioner did not possess or present an appropriate entry visa, he was taken to the Krome North Service Processing Center (hereinafter "Krome") and placed in exclusion proceedings under Section 236(a) of the INA, 8 U.S.C. § 1226(a). Petitioner was charged with being excludable for seeking entry by fraud in violation of Section 212(a)(19) of the INA, 8 U.S.C. § 1182(a)(19), and for not possessing a valid immigration visa as required by § 212(a)(20) of the INA, 8 U.S.C. § 1182(a)(20). Petitioner was served with a Form I–22 "Notice of Applicant for Admission Detained for Hearing Before Immigration Judge."

Petitioner was not advised of his rights nor provided a list of free legal services which were available. On November 3, 1988, approximately two weeks after arriving in this country, Petitioner appeared *pro se* before Immigration Judge Keith C. Williams at Krome for an exclusion hearing. The immigration judge began the hearing by informing Petitioner of his right to be represented by counsel and his right to speak for himself. The judge asked Petitioner "Do you want time to try to get a lawyer or do you wish to speak for yourself today." Petitioner, unaware of the availability of free legal services, and ignorant of the nature and consequences of the hearing, stated that he would speak for himself.

The immigration judge administered the oath to Petitioner and proceeded to question him about his true name and the passport he presented at the airport. The passport was offered into evidence by the Immi-

gration and Naturalization Service (hereinafter "INS") trial attorney, along with an analysis indicating the passport photograph had been switched. The immigration judge then asked Petitioner "Mr. Noel, that means of course the passport that you presented at the airport is not your own. Is that correct?" Petitioner replied "No."

The immigration judge made only one brief inquiry regarding Petitioner's purpose for coming to this country. The judge asked Petitioner "Why did you come to the United States?" Petitioner replied:

I was a young kid. My mother use to pay school for me. Sending me to school was reaching a point she could not do that anymore. So I have to look for a job. I went to learn a trade, and went for a job. At that time I went, like I said, to have that trade and try to work. But I couldn't make anything out of that working. So I have not. My Aunt collected the money somehow and send me over here.

The immigration judge then asked "Okay, so you were coming up here to try to get a better job and everything. Is that correct?" Petitioner replied "Yes, to go to school to continue my studies to have a trade in something." At this point, the judge informed Petitioner:

Mr. Noel, regrettably those are good reasons but I cannot let you into the United States on someone else's passport. I'm going to have to order that you go back to your own country.

Petitioner replied:

For myself I note that I was guilty by coming here under false name, not coming under my real name with immigration.

The judge then informed Petitioner that he was ordering him back to Haiti, and that if he disagreed with this decision, he could appeal to a higher court. The judge found Petitioner excludable pursuant to Sections 212(a)(19) and (20) of the INA, 8 U.S.C. §§ 1182(a)(19) and (20), and ordered Petitioner deported to Haiti.

The judge proceeded to give Petitioner the forms to appeal the decision, and to inform him of the date by which the appeal

papers would need to be filed. Fearing that he would not be able to explain his reasons for coming to this country, Petitioner, through an interpreter, told the judge "Your Honor, [I don't] want to receive the [appeal] paper because [I] ... ha[ve] to still keep on talking to you." The judge responded by informing Petitioner:

I've already told you what my decision is. I don't care how old or how young you are. It makes no difference to me. I cannot let you in on someone else's passport and under the law have to order you to go back to Haiti ... nothing more you will say to me will make any difference to my decision.

At no time did the judge ever advise Petitioner of the availability of free legal services, nor did the judge ascertain whether Petitioner received a list of free legal services. Moreover, the judge did not apprise Petitioner of the nature and purpose of the hearing; advise him that he would have a reasonable opportunity to present evidence on his own behalf, to examine and object to evidence against him, and to cross-examine witnesses presented by the Government.

After the hearing, Petitioner spoke with an English teacher at Krome who helped him complete an I–290A "Notice of Appeal" which he filed with the Board on November 10, 1988. In his appeal, Petitioner stated in broken English that his father had been jailed and/or killed because of his political beliefs and support of Sylvio Claude. He further explained that a group of Macoutes were seeking to kill him because he refused to join forces with them. Petitioner reiterated these fears in a letter he submitted to the Board on January 20, 1989 in support of his appeal. In the letter he stated that "I refused [to join the Macoutes] and they are looking for me to kill me so I escaped for saving my life." The Board dismissed the appeal on March 1, 1989, finding that the facts presented on appeal did not establish that the order of exclusion and deportation was erroneous. The Board further found that, though Petitioner's statement on appeal expressed apprehension of persecution, it was not suffi-cient to establish eligibility for asylum or withholding of deportation.

On March 20, 1989, INS attempted to deport Petitioner to Haiti. However, at the airport, Petitioner began to cry and beg that he not be sent back. Petitioner was returned to Krome and placed in isolation. Petitioner spent more than a month confined to the isolation facilities at Krome and the Metro Correctional Center. Upon being released from isolation in the beginning of May, 1989, Petitioner retained free counsel.

On May 10, 1989, Petitioner conferred with counsel. Petitioner informed counsel what had transpired since his arrival in this country, and explained the basis of his asylum claim. Krome was placed under a lockdown the next day and remained as such until May 19, 1989. During the lockdown, Petitioner was again placed in isolation. Because many other detainees were transferred from Krome to facilities in Louisiana and Texas, there was confusion on the part of INS officials as to the whereabouts of particular detainees. After the lockdown, Petitioner's counsel returned to Krome to interview their client, only to be erroneously informed that Petitioner was transferred to Texas. Sometime thereafter, Petitioner was able to telephone counsel and inform them that he remained at Krome.

Fearing that Petitioner's deportation was imminent, his counsel filed a Motion to Reopen and Application for Stay of Deportation with the Board on June 23, 1989 and July 3, 1989 respectively. On July 18, 1989, the Board denied the Stay of Deportation.

On September 15, 1989, INS again attempted to deport Petitioner, though the Board had yet to rule upon Petitioner's Motion to Reopen. Upon learning of the impending deportation, Petitioner's counsel made repeated calls to the Board seeking either a reconsideration of the denial of Stay pending a decision on the Motion to Reopen, or in the alternative, an immediate decision on the Motion to Reopen. Upon these requests being denied, Petitioner's counsel contacted the INS acting District

Director's office requesting an emergency stay pending a decision by the Board. This request was likewise denied. However, as before, Petitioner refused to board the airplane and was returned to Krome isolation. At no time did Petitioner fight or resist the officers in any way. After learning that Petitioner was returned to Krome, his counsel renewed efforts to stay deportation now planned for September 20, 1989. Counsel finally obtained a delay of deportation by the acting District Director until September 22, 1989.

On September 22, 1989, Petitioner, through counsel, filed a Petition for Writ of Habeas Corpus and an Application for a Temporary Restraining Order. This Court granted Petitioner's Application and set a hearing for October 4, 1989. On September 26, 1989, the Board denied Petitioner's Motion to Reopen. Petitioner remains detained at Krome. Although no longer in isolation, Petitioner is nonetheless secluded from all other Haitian detainees.

## DISCUSSION

■ The right to procedural due process guaranteed by the Fifth Amendment to the United States Constitution extends to aliens within the United States. *The Japanese Immigrant Case*, 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721 (1903). An alien's right to a full and fair deportation hearing is of constitutional dimensions because such a hearing "involves issues basic to human liberty and happiness ...," *Wong Yang Sung v. McGrath*, 339 U.S. 33, 50, 70 S.Ct. 445, 454, 94 L.Ed. 616 (1950), and because deportation can realistically deprive an individual "of all that makes life worth living." *Ng Fung Ho v. White*, 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938 (1922). While a deportation hearing need not conform to all the punctitious requirements of a criminal trial, it must conform to our society's standards of fundamental fairness. *Haitian Refugee Center v. Civiletti*, 503 F.Supp. 442, *modified*, 676 F.2d 1023 (5th Cir.1980). As the United States Supreme Court stated in *Bridges v. Wixon*, 326 U.S. 135, 154, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103 (1945):

Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standard of fairness.

"[D]ue process requires that the respondent in a deportation hearing receive timely notice; that they have an opportunity to be heard; to cross-examine witnesses against him; and to produce evidence...." *U.S. v. Gasca–Kraft*, 522 F.2d 149, 152 (9th Cir. 1975).

The INA and applicable INS regulations delineate certain procedures and rights which are to be afforded aliens. The United States Supreme Court has held that INS's compliance with its own regulations is an essential safeguard of an alien's right to due process, *Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), such that agency action in violation of such regulations must be invalidated. *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). In *Jean v. Nelson*, 727 F.2d 957 (11th Cir.1984) (*en banc*), *aff'd on other grounds*, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985), the Eleventh Circuit reiterated the principle enunciated in *Haitian Refugee Center v. Smith*, 676 F.2d 1023 (5th Cir.1982), that "judicial relief is mandated by 'agency deviation from its own regulations and procedures,' and the court's finding that the agency had acted in violation of its statutory obligations was a sufficient basis for the court's holding." 727 F.2d at 976 n. 27 (citations omitted) (5th Cir. United B 1982) (*quoting Haitian Refugee Center v. Smith*, 676 F.2d at 1041 n. 48).

■ Upon review of the record, and for the reasons set forth below, this Court finds that the immigration judge violated Petitioner's right to due process of law by depriving him of those procedural safeguards afforded by the INA. This Court further finds that the Board abused its

discretion in denying Petitioner's Motion to Reopen. Accordingly, this Court shall reverse the Order of Exclusion and Deportation, and remand this cause for re-hearing.

### The Immigration Judge Erroneously Failed to Apprise Petitioner of the Nature and Purpose of the Exclusion and Hearing

INS regulation, 8 C.F.R. § 236.2, specifically provides that an immigration judge shall inform an applicant of the nature and purpose of an exclusion hearing. However, at no time during Petitioner's exclusion hearing did the immigration judge apprise Petitioner of the nature and purpose of the hearing, nor inquire whether Petitioner understood what was taking place.[2]

Persons placed in detention are routinely heard during the course of two hearings: (1) a calendar hearing, where entry, if any, and validity of documents in an alien's possession upon arrival, are initially adjudicated; and (2) a hearing on the merits, where the remainder of the case is adjudicated sometime thereafter. Asylum applications are normally not furnished to aliens until the calendar hearing, and the applicant is then given ten days to complete and submit the application. However, because in the instant case no such calendar hearing was held, Petitioner could well have assumed such was the nature of his hearing, having no idea that what transpired during the hearing could ultimately result in his exclusion and deportation to a country where he fears for his life and liberty.[3] As the Ninth Circuit Court of Appeals stated in *Tejeda–Mata v. INS*, 626 F.2d 721, 728 (9th Cir.1980), "[p]resence can have no meaning absent comprehension."

### Petitioner did not Knowingly and Intelligently Waive his Right to be Represented by Counsel During his Exclusion Hearing

Aliens are entitled to be represented by counsel during exclusion and deportation proceedings. Section 242(b) of the INA, 8 U.S.C. § 1252(b); Section 292 of the INA, 8 U.S.C. § 1362. To insure that any waiver of counsel is made knowingly and intelligently, INS enacted 8 C.F.R. § 236.2 which provides in pertinent part:

> The immigration judge *shall ... advise [the applicant]* of the privilege of being represented by an attorney of his own choice at no expense to the Government, and *of the availability of free legal services programs located in the district where his exclusion hearing is being held; and shall ascertain that the applicant has received a list of such programs;* and request him to ascertain then and there whether he desires representation.... (emphasis added).

In *Louis v. Meissner*, 530 F.Supp. 924 (S.D.Fla.1981) (Hastings, J.), this Court enjoined INS from commencing and continuing immigration proceedings, or deporting Haitians who had been transferred by INS

---

**2.** Prior to commencing Petitioner's hearing, the immigration judge made the following statement for the record:

> This is immigration Judge Keith C. Williams of Krome Processing Center on November 3, 1988 conducting an exclusion proceeding pursuant to Form I–110 and I–122, dated October 17, '88, in the case of Himler Louissaint Jr., A28–853–550. Present is the applicant pro se. On behalf of the Service, Elena Stinson. The Creole interpreter is Jose Tavernier.

This statement, made in highly technical language, especially for someone with Petitioner's background and education, was not translated to Petitioner. Such statement is routinely addressed only to a reporter or recorder, as is evidenced by the fact that there is no question addressed to Petitioner as to his understanding of the statement. Moreover, in INS District No.

6, comments such as those in question are never interpreted to the applicant and the INS invariably and successfully opposes all motions requesting that be done. In *In re Exilus*, Int.Dec. 2914 (BIA 1982), the Board endorsed INS's position and continues to do so, although at least one circuit court has found such a practice constitutes a denial of due process. *See Augustin v. Sava*, 735 F.2d 32 (2d Cir.1984).

**3.** As discussed below, the immigration judge's failure to notify Petitioner of the nature and purpose of the hearing was exacerbated by the fact the judge also failed to inform Petitioner of the fundamental steps in proceeding with his case, including his right to a reasonable opportunity to present evidence, to examine and object to evidence against him, and to cross-examine government witnesses, as required by INS regulation, 8 C.F.R. § 236.2.

from Miami to detention camps located in various other States. This Court concluded that "[b]y transferring these refugees to desolate, remote areas, wholly lacking in counsel ..., INS has thwarted the statutory and regulatory rights of these refugees to representation...." 530 F.Supp at 927.

The immigration judge in the instant case failed to inform Petitioner of the availability of free legal services. At no point during the hearing did the judge attempt to ascertain whether Petitioner had previously received a list of such services, and understood its significance, nor did he even allude to the existence of free legal counsel. While the judge did inform Petitioner of the right to be represented by counsel in the proceedings, he informed Petitioner in the next breath that he had the right to speak for himself. The exchange between the judge and Petitioner was as follows:

Q. Sir, in this hearing you have the right to be represented by a lawyer. You also have the right to speak for yourself. Do you want time to try to get a lawyer or do you wish to speak for yourself today? Okay.

A. I want to speak for myself.

The judge only mentioned Petitioner's right to an attorney once and at no point did he inquire whether Petitioner had sufficient funds to retain counsel.

It is well established that the abandonment of federal rights such as the right to counsel must be intentional, and may not be presumed. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). For a waiver of counsel to be valid, it must be an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). This principle applies with equal import to immigration proceedings. As the court stated in *In re Guttierez*, 16 I & N 2587 at 228 (BIA 1977), "meticulous care must be exercised to ensure that a waiver of this right is competently and understandingly made."

Because Petitioner was not advised that, as an indigent, he had access to free legal services, his acquiescence in proceeding without counsel could not, as a matter of fact, been an intelligent relinquishment of a *known* right. As the dissenting judge on the Board emphasized in the instant case:

The purpose of 8 C.F.R. 236.2(a) is to ensure the Applicant is fully aware of the availability of the free legal services to knowingly and intelligently make a decision regarding legal representation. One cannot make an intelligent decision regarding representation without full knowledge of the options available to him. For these reasons, I would deem that Applicant was prejudiced and would reverse and remand the case for a new hearing.

Moreover, the fact that Petitioner: was only sixteen years of age at the time of the hearing; did not speak English; was unfamiliar with our legal system; was confined at Krome, much of the time in isolation; and was not apprised of the nature and purpose of the hearing; combined with the fact that exclusion proceedings were swiftly instituted against him, negates any possibility that he intelligently and knowingly waived his right to counsel. Rather, this Court finds that Petitioner indicated that he would speak for himself only because he felt that he had no other choice, that is, he knew that he could not afford an attorney, and was not advised that free legal services were available.

*The Immigration Judge Prevented Petitioner from Making Crucial Statements During his Hearing and from Submitting Other Evidence in Support of his Claims in his own Behalf*

■ The immigration judge prevented Petitioner from meaningfully participating in his hearing by thwarting his attempts to make statements in his own behalf and develop relevant testimony. During Petitioner's hearing, which was over in a matter of a few minutes, the judge asked a total of two questions regarding Petitioner's purpose for coming to the United States, one of which was a leading question intended to conclude that Petitioner was an economic refugee:

JUDGE TO PETITIONER: Okay, so you were coming up here to try to get a better job and everything. Is that correct?

The expeditious manner which the hearing was pursued undermines the probability that a record could be assembled to afford a basis for informed decision-making. Petitioner's hearing filled only three and one-half pages of testimony.

Uncertain at what point to begin telling his asylum story, Petitioner attempted to insist that the judge let him continue with his statements as to why he fled Haiti. Petitioner felt so strongly about this that he indicated that he did not wish to accept the appeal papers handed him by the judge until he could make additional statements on his own behalf. As the interpreter informed the judge, "Your Honor, [Petitioner] doesn't want to receive the [appeal] paper because he said he had to still keep on talking to you." The judge nonetheless refused to allow Petitioner to do so, stating that "nothing more you [Petitioner] will say to me will make any difference to my decision."

Clearly such action on the part of the immigration judge violated Petitioner's statutory right to a reasonable opportunity to present evidence in his own behalf. 8 C.F.R. § 236.2(a). Similarly, the immigration judge violated Section 236.2(a) by failing to:

advise him [applicant] that he will have a reasonable opportunity to present evidence in his own behalf, to examine and object to evidence against him, and to cross-examine witnesses presented by the government.

Additionally, the judge's actions violated Petitioner's due process right to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965), *cited in Nunez v. Boldin,* 537 F.Supp. 578, 586 (S.D.Tex.1982). As the United States Supreme Court professed:

[A] hearing in its very essence, demands that he who is entitled to it shall have the right to support his allegations by argument however brief, and, if need be, by proof, however informal.

*Memphis Light, Gas and Water Div. v. Craft,* 436 U.S. 1, 16 n. 17, 98 S.Ct. 1554, 1564 n. 17, 56 L.Ed.2d 30 (1978) (*quoting Londoner v. Denver,* 210 U.S. 373, 386, 28 S.Ct. 708, 714, 52 L.Ed. 1103 (1908).

## *The Immigration Judge's Actions Effectively Precluded Petitioner from Filing his Asylum Claim*

█ The immigration judge deprived Petitioner of his unqualified right to apply for political asylum and the withholding of deportation. The INA provides Petitioner with a statutory and regulatory right to petition for asylum. Section 236(a) of the INA, 8 U.S.C. § 1226(a); 8 C.F.R. § 236.3. Though the Act nor its accompanying regulations require INS to inform all potential applicants of their right to seek asylum, *Jean v. Nelson,* 727 F.2d at 983 n. 35, if the applicant indicates his desire to do so, or if he makes statements alleging fear of persecution in his homeland which flags the judge's attention to his asylum claim, he must then be allowed to file for such relief.

Petitioner was prevented from making crucial statements during the hearing which would have flagged the judge's attention of his desire to claim political asylum. The judge instructed Petitioner to make no more statements in his own behalf during the hearing. Consequently, the issue of political asylum was never raised during the hearing. This is especially disconcerting, given Petitioner's age, the fact that he was without counsel, spoke no English, and was completely unfamiliar with our legal system and the nature of the proceedings against him. As the Board stated in *In re Francoise Fleurismond,* A28 556 852 March 3, 1989 (unpublished decision):

[The applicant's] hearing was conducted in such an expeditious manner that she was effectively deprived of an opportunity to apply for asylum. The right to apply for asylum must be carefully safeguarded, especially in the case of a *pro se* alien.

Whereas here, the Government makes the exercise of a right to petition for political asylum utterly impossible, the Government violates the fundamental fairness which is the essence of due process.

It is important to note that the decision whether to apply for political asylum was for Petitioner, and not the immigration judge, to decide. As the Board itself has recognized:

> The regulations provide that an applicant in exclusion proceedings may submit a written application for asylum (Form I-589) which will be referred to the Department of State Bureau of Human Rights and Humanitarian Affairs for an advisory opinion, and that the applicant will subsequently be given the opportunity to testify and present evidence regarding the application. 8 C.F.R. § 236.3(a). An *immigration judge should not judge the merits of an asylum application prior to the completion of the aforementioned process.*

*In re Alcin*, A28 557 164 March 9, 1989 (unpublished decison) (emphasis added). As the Fifth Circuit stated in *Campos-Guardado v. INS*, 809 F.2d 285 (5th Cir. 1987):

> [U]nder extreme circumstances, such as those obtaining under the former Duvalier regime in Haiti, the Service cannot presume that people without overt political activity, or lacking minority political opinions, will not be the victims of political persecution ... [S]uch extraordinary circumstances ... require more latitude in assessing whether the persecution is on account of political opinion.

*Id.* at 289.

### Petitioner Exhausted His Administrative Remedies

■ Under Section 106a(b) of the Act, 8 U.S.C. § 1105a(b), an alien against whom a final order of exclusion has been entered, is entitled to a review of such order through habeas corpus proceedings. Section 106a(c), 8 U.S.C. § 1105a(c), provides:

> An order of deportation or exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations or if he has departed from the United States after the issuance of the order.

This statutory exhaustion requirement is jurisdictional. *Joo v. INS*, 813 F.2d 211 (9th Cir.1987) ("The failure to exhaust administrative remedies deprives this court of jurisdiction to review the order of deportation."); *Garcia–Mir v. Smith*, 766 F.2d 1478, 1489 (11th Cir.1985), *cert. denied sub nom., Marquez–Medina v. Meese*, 475 U.S. 1022, 106 S.Ct. 1213, 89 L.Ed.2d 325 (1986) ("Congress made explicit that it intended to make exhaustion of all available administrative remedies an absolute prerequisite to judicial review"). The failure to perfect an appeal to the Board by inadequately specifying the reasons on the notice of appeal constitutes a failure to exhaust administrative remedies. *See, e.g., Townsend v. United States Dept. of Justice INS*, 799 F.2d 179, 182 (5th. Cir.1986) (petitioner's "neglect in not perfecting their appeal to the Board [was] a failure to exhaust available administrative remedies."); and *Der-Rong Chour v. INS*, 578 F.2d 464, 468 (2d Cir.1978), *cert. denied*, 440 U.S. 980, 99 S.Ct. 1786, 60 L.Ed.2d 239 (1979) (in petition for review of denial of reopening, alien's failure to present an issue to the Board "precludes review of that claim here").

Respondent maintains that this Court lacks jurisdiction to consider Petitioner's argument that the immigration judge failed to explain to him the nature and purpose of his exclusion proceeding because he did not raise this issue before the Board. This Court disagrees on the basis that Petitioner was denied effective assistance of counsel before the immigration court, and later on appeal to the Board.

Given that Petitioner is represented by counsel in this matter, had the immigration judge originally apprised Petitioner of the availability of free legal services, Petitioner surely would have been represented by counsel during his exclusion proceeding. With assistance of counsel, not only would the judge have apprised Petitioner of the

nature and purpose of the exclusion proceeding, but in the event that the judge failed to do so, this issue would have surely been raised on appeal.

### Board's Denial of Petitioner's Motion to Reopen and Reconsider was Clearly Erroneous and an Abuse of Discretion

█ The Board's denial of Petitioner's Motion to Reopen and Reconsider was clearly erroneous and an abuse of discretion.

First, this Court finds that the Board's finding that Petitioner, a young, detained, non-English speaking alien unfamiliar with our legal system, was informed of the nature and purpose of the hearing, and that any failure on the part of the immigration judge to apprise Petitioner of the same was harmless error which did not prejudice Petitioner, was clearly erroneous and an abuse of discretion. This Court finds that had Petitioner been apprised of the type of proceeding initiated against him, he may well have insisted on obtaining legal representation, or at the very least, would have sought a continuance to prepare his case.

Secondly, the Board erroneously found that since Petitioner voluntarily chose to speak for himself, he was not prejudiced by having to proceed without assistance of counsel. In support of their position, the Board cited to clearly inapposite cases.

The Board relied on *Barthold v. INS*, 517 F.2d 689 (5th Cir.1975) and *Delgado–Corea v. INS*, 804 F.2d 261 (4th Cir.1986). In *Barthold*, the court found that where the immigration judge offered the alien the opportunity to obtain a free lawyer from legal services, and the alien voluntarily forewent that opportunity, the alien has not been denied due process. The judge in that case, unlike the judge in the instant case, questioned the alien at length regarding his right to free legal services and how to proceed to best represent himself.

Likewise, in *Delgado–Corea*, the Government's attorney told the immigration judge, in an answer to his inquiry, that the aliens in question had been given a list of free legal services as required by the regulations. Having received the information, the judge proceeded with the hearing unaware that the list which had been provided was for the Tucson, Phoenix and San Diego areas, rather than for Los Angeles where the hearing was conducted. Additionally, even after being informed by the aliens that they wanted to proceed without counsel, the judge asked whether they had received the list of free legal services. The Fourth Circuit denied the applicants relief on the basis that they had understood the judge's questions regarding their right to representation and they were aware that free legal representation was an option but chose to proceed on their own.

Deprivation of Petitioner's right to counsel cannot simply be dismissed as harmless error. The Ninth Circuit recently commented that the Congressional mandate that representation in immigration proceedings must be "at no expense to the government" may be unconstitutional in certain instances.

> We note that Congress' treatment of indigent aliens in § 292 may not be Constitutional as applied in individual cases. The Fifth Amendment guarantee of Due Process applies to immigration proceedings, and in specific proceedings, Due Process could be held to require that an indigent alien be provided with counsel despite the prohibition of § 292.

*Escobar Ruiz v. INS*, 787 F.2d 1294, 1297 n. 3 (9th Cir.1986). As the Seventh Circuit stated in *Castaneda–Delgado v. INS*, 525 F.2d 1295, 1300 (7th Cir.1975), the very real adverse consequences of error which may result due to the denial of the right to counsel in deportation proceedings is "too important and fundamental a right to be circumscribed by a harmless error rule."

For instance, had Petitioner been aware of his right to apply for political asylum, he still would have been unable to fill out by himself the standard INS asylum forms. It would be unreasonable to expect a non-English speaking alien, unfamiliar with American administrative processes, facing a threatening new environment, and without assistance of counsel, to have completed, in English and in quadruplicate, forms

at least six pages long, which had never been previously provided to him, and the existence of which he was unaware. Similarly, assistance of counsel is crucial in obtaining evidence and developing the factual record.

Thirdly, the Board's refusal to recognize that Petitioner was effectively prevented from presenting and substantiating his claim for political asylum was clearly erroneous and an abuse of discretion. But for the judge's actions, Petitioner may well have made a *prima facie* showing that he is eligible for political asylum.

The Board erroneously found that Petitioner was not prejudiced by the judge's actions because he "was given an opportunity to show he was eligible for relief from exclusion and deportation" but failed to do so. In so doing, the Board noted that "it is only in ... his appeal that he [Petitioner] mentions his fear of returning to Haiti." Such a finding disregards the vital fact that Petitioner was prevented from detailing the reasons he feared returning to Haiti at the hearing.

During the hearing, Petitioner was asked a total of two questions. The first question was why he came to the United States, whereas the second leading question posed by the judge was "OK, so you're here to get a better job, is that correct?" In fact, in protesting the judge's refusal to allow him to elaborate on his previous statements regarding why he left Haiti, Petitioner went so far as to resist taking the appeal forms handed to him by the judge. Similarly, the Board's finding that Petitioner was not harmed because he has not set forth any new facts which would affect his request for asylum ignores the very obvious fact that Petitioner was effectively prevented from doing so in the first place. The Board's argument that Petitioner did not submit new evidence subsequent to his exclusion hearing implies that he was previously allowed to submit evidence during a full and fair hearing, which clearly is not the case.

The Board itself has found that in cases where the alien has not previously had the opportunity to present an application for relief, it is error for them to require the alien to establish *prima facie* eligibility for asylum in conjunction with his Motion to Reopen.

To require him [alien in question] to establish *prima facie* eligibility for asylum in conjunction with his Motion to Reopen, before he is given the opportunity to a hearing on his asylum claim, would violate his statutory right to such a hearing. *In re Ruiz,* Int.Dec. 3116 (BIA 1989).

In *Ruiz,* the Board reversed the decision of the immigration judge where the alien had initially appeared at an exclusion hearing which was continued to allow him time to submit an asylum application and had failed to appear at a subsequent hearing which the judge decided to conduct *in absentia.* In finding that the applicant had a valid excuse for not appearing at his hearing, the Board ruled that he therefore retained his statutory right to apply for relief. Similarly, the United States Supreme Court has held that a motion to reopen exclusion or deportation proceedings is appropriate when the movant has reasonably explained his failure to apply for asylum prior to the completion of the initial proceeding. *INS v. Abudu,* 485 U.S. 94, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988).

Finally, the Board erroneously found that the immigration judge did not err in failing to inform Petitioner of his right to apply for political asylum because the judge was not required to question Petitioner regarding his potential eligibility for asylum. This Court cannot help but wonder how Petitioner was to request asylum when he was ordered not to make any further statements to the judge during his hearing and when he had no attorney to inform the judge that the cutting off of his testimony was illegal and that Petitioner wished to apply for asylum.

In his appeal, Petitioner stated that he "had a very though (Sic) time fighting against poverty, corruption and political problems." He goes on to cite the unexplained disappearance of his father who had campaigned extensively for opposition leader Sylvio Claude, and his own refusal to join the Tonton Macoutes. In a letter

submitted to the Board on January 17, 1989, Petitioner further explained that he fled Haiti because of "insecurity and persecution" and because the Macoutes "are looking for me to kill me so I escaped for saving my life."

Petitioner cites to cases wherein the Board has granted motions to reopen. The Board distinguished one such case on the basis that the individual in question had specified two incidents of violence which made him fearful of returning to Haiti, while Petitioner had not advanced any reasons supporting his alleged fear of being returned. Again, such finding totally ignores the fact that Petitioner was wrongly prevented from substantiating his claim for political asylum. Additionally, it ignores Petitioner's very statements in his *pro se* Appeal which addressed two specific incidents of violence which made him fearful of returning to Haiti.

### Recently Available Evidence

█ Subsequent to Petitioner's hearing before the immigration judge, Petitioner learned of the existence of substantial and critical materials which lend support to his claim for political asylum. These materials are highly pertinent to Petitioner's claim for asylum as they outline the background conditions in Haiti during the time Petitioner encountered difficulties with the authorities. These materials, including a report from Amnesty International, discuss the likelihood of someone in his particular position being persecuted upon return. In addition, Petitioner recently received an affidavit from an Amy Wilentz, author of the recently published book, *The Rainy Season: Haiti Since Duvalier*. The affidavit addresses the nature of the Sans Manmans (branch of the Macoutes), the group Petitioner refused to join, and details the role of the Macoutes in Haiti today and the possible consequences of refusing to join that group after being requested to do so. As the Court recognized in *Jean v. Nelson*, 711 F.2d 1455, a "well-founded fear" of persecution must be determined in part from an assessment of available background articles on conditions in the applicant's home country.

The evaluation of Petitioner's application requires consideration of all presently available evidence on conditions in Haiti, since the implication of future deportation must be weighted. Wherefore, because these materials were not previously available to Petitioner because his counsel has only recently learned of their existence, Petitioner is entitled to a new hearing based on this newly acquired evidence. This new evidence may very well demonstrate that Petitioner is fully justified in having a well-founded fear of persecution should he be returned to Haiti.

### CONCLUSION

INS has routinely engaged in underhanded tactics in dealing with Haitians seeking asylum in this country, and has singled them out for special discriminatory treatment. Repeatedly, this Court and other federal courts have found that INS has engaged in illegal practices and policies with respect to Haitians. *See, e.g., Haitian Refugee Center v. Civiletti*, 503 F.Supp. 442 (court found there to be a "Haitian Program," which subjected Haitian asylum seekers to an accelerated program, the purpose of which was to deny them asylum); and *Jean v. Nelson*, 711 F.2d 1455 (finding that INS engaged in "human shell game" directed at Haitians). This is such a case. Absent a decision from this Court overruling the Board's decision, Petitioner will be required to return to Haiti where he fears persecution, imprisonment, and/or death without being afforded an opportunity to present his claim for political asylum to a judge.

This Court finds that it is highly improbable that the immigration judge would be able to strike from his mind those matters which have clearly transpired in this cause. Consequently, it is the view of this Court that Petitioner is entitled to a *de novo* hearing without any reference to any prior proceedings. However, evidence which may have been presented at the previous hearing and which would similarly be admissible in the *de novo* hearing is obviously entitled to be heard by the new immigra-

tion judge, but not on the grounds that it was part of any prior proceeding.

Based on the above and foregoing, it is hereby

ORDERED AND ADJUDGED that Petitioner's Amended Habeas Petition is GRANTED and be and the same issued. The immigration court's Order of Exclusion and Deportation is REVERSED, and this cause is REMANDED to the immigration court for re-hearing in accordance with this Order.

DONE AND ORDERED.