36 F.3d 1092
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Behnam FOROUZANDEH-DEHKORDI, Petitioner,
v.
U.S. IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-2214.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 10, 1994.
Decided Sept. 22, 1994.
 
 On Petition for Review of an Order of the Immigration and Naturalization Service. (A26-598-854)
 Paul Augustine Suhr, Raleigh, NC, for Petitioner.
 Frank W. Hunger, Asst. Atty. Gen., Robert Kendall, Jr., Asst. Director, Charles E. Pazar, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for respondent.
 Before NIEMEYER and MOTZ, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Behnam Forouzandeh-Dehkordi (Dehkordi) petitions for review of the Board of Immigration Appeals' (BIA) decision denying his request for suspension of deportation under 8 U.S.C.A.Sec. 1254(a)(1) (West 1970 & Supp.1994).[1] After a review of the record, we affirm the BIA's decision.
 
 
 2
 * Dehkordi, an Iranian citizen, entered the United States on a student visa in 1978. In 1983 he left school and began working, in violation of his student visa status. In 1990 the INS ordered Dehkordi to show cause why he should not be deported pursuant to 8 U.S.C. Sec. 1251(a)(9) (1988) (current version at 8 U.S.C.A. Sec. 1251(a)(1)(C) (West Supp.1994)),[2] for violating his visa status.[3] At Dehkordi's initial deportation hearing he chose to proceed pro se, although the option of obtaining counsel was explained to him. Additionally, the immigration judge (IJ) informed him of his options for relief from deportation, and continued the hearing so that Dehkordi could apply for relief. Dehkordi sought suspension of deportation, and a second hearing was held.[4] At the second hearing Dehkordi reiterated his interest in proceeding pro se and was told by the IJ that he could present evidence and "question or challenge any evidence presented by the Government." Dehkordi testified that he had married a United States citizen in 1984, separated in February 1985, and divorced in 1987. He had one daughter, and his ex-wife was awarded custody based on Dehkordi's violence in the marriage and her positive relationship with the child. He admitted to an April 1985 conviction for assault and battery, a November 1985 conviction for assault with a deadly weapon (a stool), an April 1987 conviction for assault on a female (his ex-wife), and a May 1987 conviction for communicating threats to his ex-wife. He received forty-five to ninety days in jail on two convictions and suspended one-year sentences for all the offenses.
 
 
 3
 In June 1985 Dehkordi applied for permanent resident status with his then-wife. In an affidavit submitted with his application, he stated that he had never hit his wife, he was never arrested or convicted, and that he and his wife had never separated. His ex-wife also submitted an affidavit, contradicting every one of his responses. The INS admitted both affidavits as evidence of Dehkordi's lack of good moral character. The INS also revealed that in his application for suspension of deportation, Dehkordi denied ever being arrested or convicted.
 
 
 4
 Dehkordi testified that his ex-wife was unstable and beat him, that he had excelled in his career with Pizza Hut, and that his daughter would be hurt by his deportation.
 
 
 5
 The IJ found that Dehkordi lacked the requisite good moral character under 8 U.S.C.A. Sec. 1101(f) (West 1970 & Supp.1994) and that additionally he had failed to show extreme hardship. Dehkordi retained counsel and appealed to the BIA, challenging the IJ's findings on the merits and asserting that his due process rights were violated because he was denied his right to cross-examine witnesses. The BIA affirmed the IJ's decision.
 
 II
 
 6
 Dehkordi raises only two issues before us--whether his due process rights were violated at the deportation hearing and whether the catchall provision of Sec. 1101(f) is unconstitutionally vague.[5] The latter claim was not raised before the BIA and so we shall not address it. See Wong Tui v. United States, 273 U.S. 77, 78-79 (1927); Farrokhi v. INS, 900 F.2d 697, 700 (4th Cir.1990); Nelms v. Laird, 442 F.2d 1163, 1169 (4th Cir.1971), rev'd on other grounds, 406 U.S. 797 (1972).
 
 
 7
 There was no error in the BIA determination as to Dehkordi's due process claim. Under 8 U.S.C.A. Sec. 1252(b) (West Supp.1994), an alien must be given the opportunity to examine the evidence against him and cross-examine witnesses presented by the Government. Dehkordi claims he was not properly informed of these rights. Additionally, he alleges that the Government's introduction of his ex-wife's 1985 affidavit violated his right to cross-examine witnesses. However, prior to the commencement of the hearing the IJ informed Dehkordi that he had the right to "challenge or question any evidence from the Government." Further, the Government presented no witnesses for cross-examination, and Dehkordi clearly demonstrated his understanding of his right to challenge evidence by asking the IJ if he should wait and present his objections at the end of the INS's presentation or as each piece of evidence was brought out.
 
 
 8
 As for Dehkordi's allegation that the admission of his ex-wife's affidavit resulted in a due process violation, "[t]he role of the judiciary [in reviewing due process challenges] is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause." Farrokhi v. INS, 900 F.2d 697, 702 (4th Cir.1990) (quoting Landon v. Plasencia, 459 U.S. 21, 34-35 (1982)). Additionally, Dehkordi must show that he was prejudiced by the admission. Id.; see also Delgado-Corea v. INS, 804 F.2d 261, 262-63 (4th Cir.1986) (alien must show prejudice from INS's violation of regulation requiring that list of legal services be provided to alien). Because Dehkordi independently acknowledged the veracity of all the facts included in his ex-wife's affidavit prior to its introduction at the hearing, he can show no prejudice from its admission.[6] Additionally, he knew of the affidavit because it was part of his 1985 application for permanent residence status. Hence, there was no fundamental unfairness or prejudice in the IJ's admission of the affidavit.
 
 AFFIRMED
 
 
 [1]
 This section is sometimes referred to as Sec. 244(a)(1)
 
 
 [2]
 This section is sometimes referred to as Sec. 241(a)(9)
 
 
 [3]
 Dehkordi was originally charged with staying in the country on an expired visa, 8 U.S.C. Sec. 1251(a)(2) (1988) (also referred to as Sec. 241(a)(2)) (current version at 8 U.S.C.A.Sec. 1251(a)(1)(B) (West Supp.1994)); however, at Dehkordi's first deportation hearing in January 1991 he consented to allow the INS to amend the show cause order to properly reflect a charge of violating his visa status underSec. 1251(a)(9)
 
 
 [4]
 To qualify for suspension of deportation, an alien must have seven consecutive years of residency in the United States, a good moral character as defined in the immigration statute, and his deportation must result in an extreme hardship to him, his spouse, or his child. INS v. Hector, 479 U.S. 85, 86 (1986)
 
 
 [5]
 Dehkordi did not raise a challenge to the substantive basis for the denial of his request for suspension of deportation on appeal. Additionally, Dehkordi's failure to appeal the IJ's denial of his request for voluntary departure to the BIA forecloses review of this issue. See 8 U.S.C. Sec. 1105a(c) (1988)
 
 
 [6]
 The affidavit attested to Dehkordi's arrest and conviction for assaulting his ex-wife's ex-husband, his violence toward his ex-wife, and their separation. At the hearing Dehkordi testified that he had an April 1985 conviction for assaulting his ex-wife's ex-husband, that his marriage was violent, and that they separated prior to the affidavit being taken