Raudel CASTANEDA–DELGADO and
Sebastiana Godina de Castaneda,
Petitioners,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 74–1893.

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1975.

Decided Nov. 26, 1975.

Alan D. Dockterman, Kalman D. Resnick, Chicago, Ill., for petitioners.

Samuel K. Skinner, U. S. Atty., Chicago, Ill., Mary Jo Grotenrath, Dept. of Justice, Washington, D. C., for respondent.

Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge, and BRYAN,* Senior District Judge.

FREDERICK VAN PELT BRYAN, Senior District Judge.

Petitioners, Raudel Castaneda-Delgado and Sebastiana Godina de Castaneda (Raudel and Sebastiana Castaneda), after a hearing before an immigration judge[1], were found to be deportable aliens. They were ordered deported to Mexico unless they departed from the United States voluntarily within two months.

Petitioners appealed to the Board of Immigration Appeals from the order of deportation on the grounds that they had been improperly denied both statutory and constitutional rights to counsel at the hearing. The Board ordered the appeal dismissed, extended the time for voluntary departure and directed that, in the event of failure to depart voluntarily, petitioners should be deported as provided in the order of the immigration judge.

Before us is a petition for review of the Board's order pursuant to Section 106 of the Immigration and Nationality Act, 8 U.S.C. § 1105a (1970). The petition for review raises the same issues as to denial of petitioners' statutory and constitutional rights to counsel as were raised before the Board of Immigration Appeals. Since we hold that petitioners were improperly deprived of their statutory right to counsel at the hearing before the immigration judge, and reverse the order of the Board on that ground, we do not reach the constitutional question presented.

The Castanedas are natives and citizens of Mexico, residing in Chicago. They are married and have two small children, 15 months and 5 months old at the time of the hearing. Both children were born in Chicago and thus are American citizens by birth. The husband had lost his job, and was unemployed. The wife was employed as a machine operator, with earnings of $82.00 per week. This was their only source of income. Petitioners' language was Spanish and they did not speak or understand English.

On April 21, 1974, Raudel Castaneda was arrested by the Chicago police for an alleged violation of the Illinois Motor Vehicle Code. After interrogating him, the police turned him over to the custody of the Immigration and Naturalization Service (INS). On April 25, 1974, an "order to show cause, notice of hearing, and warrant for arrest" were served on each of the Castanedas, directing them to appear at a deportation hearing before an immigration judge on April 30. Thereafter, they were notified that the hearing was rescheduled for May 8, 1974 at 2:00 P.M.

Both Castanedas duly appeared before the immigration judge on the afternoon of May 8. After it appeared that they did not speak or understand English, questioning was conducted through a

---

* Frederick van Pelt Bryan, of the Southern District of New York, sitting by designation.

Spanish interpreter. The following colloquy between the immigration judge and the petitioners ensued:

Q. You have a right at this hearing to be represented by counsel of your own selection without expense to the Government of the United States. Such counsel may be an attorney, that is, a lawyer or other person authorized to act as an attorney in proceedings before the Immigration Service. Or, if you wish to go ahead without a lawyer, you may go ahead without a lawyer. What do you wish to do?

A. We understand, sir; we will like to wait until Friday when we can be represented by our attorney.

Q. All right. I am going to continue your case until Friday morning, May 10, at 9 a. m., to give you an opportunity to have your lawyer with you here. I will not grant any more continuances for that purpose. We will go ahead Friday morning whether you have a lawyer or not. Do you understand?

A. We understand, sir.

On May 10, at 9:00 a. m., petitioners again appeared. They were still without a lawyer. At the commencement of the hearing the following exchange took place between the immigration judge and both Castanedas:

Q. Are you the same Raudel and Sebastiana Castaneda who appeared before me on Wednesday, May 8?

A. Yes, sir.

Q. At that time I granted you a continuance to enable you to obtain an [sic] lawyer to represent you. I see you do not have a lawyer here with you today; can you explain why?

A. The attorney was unable to come and we are going to look for another attorney.

Q. Well, I advised you that I would only grant you one continuance; I will not grant any further ones, we will proceed with the hearing. Will both you and your wife stand and raise your right hands please?

The immigration judge then administered the oath to both. After stating that they would be given an opportunity "to see, hear and to examine everything that is used as evidence and I'll give you an opportunity to say and present those things that you want me to consider in deciding your cases," he addressed the following question to both:

Q. I will read each of you the five allegations of fact and the charges that are contained in the orders to show cause that relates [sic] to you, and then I'll ask you to either admit or deny that each is true. Do you understand?

A. Yes (by both).

Raudel Castaneda was charged in the order to show cause with entering the United States without inspection in violation of Section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2) (1970). Sebastiana Castaneda was charged with remaining in the United States for a longer time than permitted after admission as a nonimmigrant, in violation of the same section.

Each of them answered "yes" to a series of questions by the immigration judge as to whether each of the 5 factual allegations in the orders to show cause concerning them was true and as to whether they admitted they were deportable. This was, in substance, a pleading to the orders to show cause under 8 C.F.R. § 242.16(b). These admissions were the only evidence of deportability before the immigration judge. There is no other evidence on that subject in the record. Upon hearing the Castanedas' admissions, the immigration judge considered that deportability had been established. Such inquiries as followed related only to the eligibility of the Castanedas for voluntary departure. At the conclusion of the hearing the immigration judge found them both deportable, afforded them voluntary departure, and advised them of their rights to appeal.

Appeals were taken to the Board of Immigration Appeals from the orders of

deportation. The Castanedas, through the Legal Assistance Foundation of Chicago, secured counsel to represent them on the appeals and counsel filed a brief on their behalf.

The Board of Immigration Appeals found (1) that "deportability has been established by evidence which is clear, convincing, and unequivocal," (2) that "the immigration judge has correctly applied the pertinent legal principles," and (3) that "the aliens were not prejudiced by the fact that counsel was not present at the hearing, and . . . were accorded a fair hearing." It ordered the appeal dismissed. This petition for review followed.

## I.

The first question to which we address ourselves here is whether the Castanedas were improperly denied the right, granted by statute and regulation, to be represented by counsel at the hearing of May 10, in which they were found to be deportable.

The Castanedas urge that the action of the immigration judge at that hearing in summarily denying them a further continuance in order to give them time to obtain an attorney to represent them and in compelling them to proceed without an attorney was arbitrary, capricious and an abuse of discretion which improperly and effectively deprived them of their right to be represented by an attorney of their choice.

Two separate sections of the Immigration and Nationality Act, Sections 242(b)(2) and 292, 8 U.S.C. §§ 1252(b) and 1362 (1970), provide in identical language that an alien in a deportation proceeding "shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose." These sections are implemented by regulations which speak in terms of the "right" of an alien to counsel in deportation proceedings. 8 C.F.R. §§ 242.2(a), 242.16(a) and 292.5(b).

8 C.F.R. § 292.5(b) provides that "[w]henever an examination is provided for in this chapter, the person involved shall have the right to be represented by an attorney * * *." 8 C.F.R. § 242.-16(a) requires that, at the opening of a deportation hearing, "[t]he special inquiry officer [now the immigration judge] shall advise the respondent of his right to representation, at no expense to the government, by counsel of his own choice * * * and require him to state then and there whether he desires representation * * *."

Thus, the Castanedas, as aliens in deportation proceedings, had the right granted by statute and regulation to be represented by an attorney of their choice at no expense to the Government. At the initial May 8 hearing, the Castanedas, in response to a question from the immigration judge, specifically stated that they desired such representation and wished an opportunity to secure an attorney. A continuance from the afternoon of May 8 until 9:00 A.M. on May 10 was granted for that purpose.

On the morning of May 10 the Castanedas appeared without an attorney. They explained to the immigration judge that their attorney was unable to come but that they were going to look for another attorney. The immigration judge thereupon summarily ruled that a further continuance would not be granted and that the Castanedas must proceed with the hearing without an attorney. The hearing proceeded to a conclusion on that basis and the Castanedas were found deportable.

8 C.F.R. § 242.13 provides that after the commencement of a deportation hearing the immigration judge may grant a reasonable adjournment for good cause shown at his own instance or upon request, but that "[a] continuance of the hearing for the purpose of allowing the respondent to obtain representation shall not be granted more than once unless sufficient cause for the granting of more time is shown."

Relying on Section 242.13, the INS argues that since one continuance for the purpose of obtaining representation had been granted the Castanedas on May 8, the denial of a second continuance on May 10 was wholly within the discretion of the immigration judge and cannot be said to be arbitrary and capricious or an abuse of discretion.

■ The argument ignores the language of Section 242.13, expressly authorizing a further continuance for the purpose of obtaining representation if "sufficient cause for the granting of more time is shown." In the circumstances of this case, we find the argument singularly unimpressive.

The Castanedas were simple working people in their early 20's, with two infant children. They had extremely limited means. Their language was Spanish and they did not speak or understand English. They had been in Chicago a comparatively short time and had few ties there. It cannot be thought that they had any real knowledge of American law and procedure or of their legal rights.

The Castanedas had appeared before the immigration authorities when they were supposed to and there was nothing to suggest that they would not continue to do so. It was to be expected that people in their position would have difficulty in obtaining an attorney and, considering their financial position, would probably have to look to community law services to represent them. Indeed, that is where they eventually obtained counsel to represent them before the Board of Immigration Appeals.

The first continuance granted at the Castanedas' request, from the afternoon of May 8 to 9:00 o'clock in the morning of May 10, was modest to say the least. Their statement on the morning of May 10 that their attorney was unable to come and they were going to look for another attorney was reasonable and un-

derstandable. Yet, the immigration judge did not ask them to explain their predicament further or give them any opportunity to do so. He made no attempt to inquire as to the circumstances or to go more deeply into the question of whether there was "sufficient cause" for a further continuance under Section 242.13. Instead, he summarily denied a further continuance, swore in the Castanedas, compelled them to admit the charges against them, and found them deportable, even though they were without an attorney. The immigration judge acted as if Section 242.13 forbade more than one continuance for the purpose of obtaining representation rather than authorizing an additional continuance for that purpose when "sufficient cause" is shown.

There is no suggestion here that there was any pressure of time or that it was not practicable to allow additional time under these circumstances. The hearing had already been put off by the INS for eight days, from April 30 to May 8, to suit the Service's own convenience. The fact that the Castanedas were given two months for voluntary departure is a further indication that there was no time pressure. If a reasonable continuance had been granted, there is every reason to suppose that the Castanedas would have been able to obtain counsel, as they did before the Board of Immigration Appeals.

■ A deportation hearing is an administrative proceeding in which judicial review of discretionary administrative decisions, as distinguished from findings of fact,[2] is limited to questions of whether procedural due process has been afforded, whether the decision has been reached in accordance with applicable rules of law, whether there has been an exercise of administrative discretion, and, if so, whether such exercise has been arbitrary or capricious. *Kam Ng. v. Pilliod,* 279 F.2d 207, 210 (7th Cir.

---

2. Judicial review of findings of fact as to deportability includes inquiry as to whether the findings were "supported by reasonable, sub-

stantial, and probative evidence on the record considered as a whole . . . ." 8 U.S.C. § 1105a(a)(4).

1960), *cert. denied*, 365 U.S. 860, 81 S.Ct. 828, 5 L.Ed.2d 823 (1961); *Fernandez-Gonzalez v. INS*, 347 F.2d 737, 740 (7th Cir. 1965); *Jarecha v. INS*, 417 F.2d 220, 224 (5th Cir. 1969); *Aalund v. Marshall*, 461 F.2d 710, 711 (5th Cir. 1972).

■ While the question of whether or not to grant a continuance at such an administrative hearing ordinarily rests in the discretion of the officer conducting the hearing (in this case, the immigration judge), it is subject to reversal if there is a clear showing of abuse of that discretion. *NLRB v. Algoma Plywood & Veneer Co.*, 121 F.2d 602, 605 (7th Cir. 1941); *NLRB v. Air Control Products of St. Petersburg, Inc.*, 335 F.2d 245, 247 (5th Cir. 1964); *Freight Consolidators Cooperative, Inc. v. United States*, 230 F.Supp. 692, 700 (S.D.N.Y.1964) (three-judge court); *900 G. C. Affiliates, Inc. v. City of New York*, 367 F.2d 1, 4–5 (S.D.N.Y.1973).

■ In the case at bar, the immigration judge had no justification for denying a reasonable further continuance to the Castanedas for the purpose of obtaining counsel on May 10, 1974, and then compelling them to proceed with the hearing without representation. By so doing, the immigration judge denied the Castanedas procedural due process by depriving them of their right to counsel granted by statute and regulation. We hold that these actions of the immigration judge were arbitrary and capricious and constituted a gross abuse of his discretion. *Cf. Chlomos v. INS*, 516 F.2d 310 (3rd Cir. 1975).

## II.

The Board of Immigration Appeals does not appear to have passed on the question of whether the immigration judge was in error in depriving the Castanedas of the right to counsel. It merely found that deportability had been clearly established and that "the aliens were not prejudiced by the fact that counsel was not present at the hearing, and * *`* * were accorded a fair hearing." The Board based its affirmance on these grounds.

Thus, the Board's position seems to have been that denial of an alien's right to counsel in a deportation hearing was harmless error unless the alien made an affirmative showing that he was prejudiced thereby. The INS takes the same harmless error position here.

■ We disagree with that position. In our view the right to be represented by counsel of their choice granted to aliens in deportation proceedings by statute and regulations is too important and fundamental a right to be circumscribed by a harmless error rule.

It has long been settled that in criminal cases the denial of the Sixth Amendment right to the assistance of counsel is reversible error which cannot be cured by the application of any harmless error test.

In *Glasser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942), the Supreme Court declared:

> The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial. *Cf. Snyder v. Massachusetts*, 291 U.S. 97, 116, 54 S.Ct. 330, 336, 78 L.Ed. 674, 90 A.L.R. 575; *Tumey v. Ohio*, 273 U.S. 510, 535, 47 S.Ct. 437, 445, 71 L.Ed. 749, 50 A.L.R. 1243; *Patton v. United States*, 281 U.S. 276, 292, 50 S.Ct. 253, 256, 74 L.Ed. 854, 70 A.L.R. 263. And see *McCandless v. United States*, 298 U.S. 342, 347, 56 S.Ct. 764, 766, 80 L.Ed. 1205.

Since *Glasser*, the courts have repeatedly recognized that denial of the Sixth Amendment right to counsel is so inherently prejudicial that there is no room for the harmless error doctrine. See *Chapman v. California*, 386 U.S. 18, 43, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (Stewart, J., concurring); *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974); *McQueen v. Swenson*, 498 F.2d 207, 218 (8th Cir. 1974); *United States v. Dougherty*, 154 U.S.App.D.C. 76, 473

F.2d 1113, 1148 (1972). This Circuit recently reiterated this view in *United States v. Robinson,* 502 F.2d 894, 896 (7th Cir. 1974), where it was stated:

> The harmless-error doctrine applies with diminished rigor when the right to counsel is at stake . . . . When no lawyer appears to represent the defendant, and his request for legal representation is wholly denied, the proceedings are tainted from their roots, and there is no room for "nice calculations as to the amount of prejudice" flowing from the denial.

See also *United States v. Miller,* 508 F.2d 444, 452 n. 1 (7th Cir. 1974).

The same reasoning applies where a criminal defendant has a right to the appointment of counsel granted by federal statute.

In *United States v. Watson,* 496 F.2d 1125 (4th Cir. 1973), the defendant in a capital case had requested the appointment of two attorneys to represent him, as was his statutory right under 18 U.S.C. § 3005 (1970). The district court appointed one attorney to represent him but refused to appoint a second. On appeal, the Government urged that even though the defendant had been denied his statutory right to a second attorney, his conviction should not be disturbed because he was not prejudiced by a denial of that right since his single attorney presented a perfectly adequate defense and there was nothing another attorney could have done.

The Fourth Circuit found that it might be concluded from the record that defendant was fairly tried, that the evidence against him was substantial, if not overwhelming, and that it might be inferred that the defendant had not been prejudiced by denial of his right to a second attorney. Nevertheless, the court rejected the harmless error contention of the Government and reversed the conviction upon the ground that the defendant had been improperly denied his statutory right to a second attorney. The court stated:

> Section 3005 is unequivocal in its terms. We have no right to rewrite it, nor have we any right to provide a district court with the discretion to apply it that Congress purposefully and unambiguously withheld. Since in our view, the statute would be eviscerated by application of the harmless error doctrine, we perceive no alternative but to enforce it. 496 F.2d at 1130.

See also *Smith v. United States,* 122 U.S. App.D.C. 300, 353 F.2d 838, 845–846 (D.C.Cir.1965), *cert. denied,* 384 U.S. 910, 974, 86 S.Ct. 1350, 16 L.Ed.2d 362 (1966).

While a deportation hearing is not a criminal proceeding, it is fraught with serious consequences to the alien. As the Supreme Court observed in *Bridges v. Wixon,* 326 U.S. 135, 154, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103 (1945):

> Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness.

See also *Costello v. INS,* 376 U.S. 120, 128, 84 S.Ct. 580, 11 L.Ed.2d 559 (1964); *Delgadillo v. Carmichael,* 332 U.S. 388, 391, 68 S.Ct. 10, 92 L.Ed. 17 (1947); *Ng Fung Ho v. White,* 259 U.S. 276, 284, 42 S.Ct. 492, 66 L.Ed. 938 (1922); *Rose v. Woolwine,* 344 F.2d 993, 995–96 (4th Cir. 1965).

In such cases, in addition to the serious consequences of deportation itself, there is also the possibility that criminal prosecutions for violation of the immigration laws may result under 8 U.S.C. § 1325 (1970).[3]

As far as the Castanedas are concerned, we need not dwell on the serious

---

**3.** Because of this possibility, an alien has a Fifth Amendment right to decline to testify at the deportation hearing. *Valeros v. INS,* 387 F.2d 921, 922 (7th Cir. 1967); *Chavez-Raya v. INS,* 519 F.2d 397, 401 (7th Cir. 1975).

consequences of deportation for them as well as for their two small children who are American citizens.

The language of Sections 242(b)(2) and 292 of the Immigration and Naturalization Act, 8 U.S.C. §§ 1252(b)(2) and 1362 (1970), as implemented by the regulations, clearly and unambiguously grants aliens the right to counsel of their choice in deportation proceedings. Such provisions are an integral part of the procedural due process to which the alien is entitled. *Chlomos v. INS, supra,* 516 F.2d at 313. These provisions would be eviscerated by the application of the harmless error doctrine, and we see no justification for such evisceration.[4]

Here, the Castanedas were arbitrarily and capriciously denied their statutory right to counsel of their choice by an egregious abuse of discretion on the part of the immigration judge. Such denial was inherently prejudicial. The deportation proceedings, like the criminal proceedings in *United States v. Robinson, supra,* were tainted from their roots. We refuse to indulge in "nice calculations as to the amount of prejudice flowing from the denial," or to apply a harmless error test.

The circumstances call for the prophylactic remedy of vacating the order of deportation and for writing thereafter on a clean slate.[5]

The order of the Board of Immigration Appeals affirming the deportation order is reversed and the case is remanded to the Board of Immigration Appeals for further proceedings consistent with this opinion.

---

4. The cases cited in support of the proposition that the harmless error test is applicable are not controlling here.

  In *De Bernardo v. Rogers,* 102 U.S.App.D.C. 382, 254 F.2d 81, *cert. denied,* 358 U.S. 816, 79 S.Ct. 24, 3 L.Ed.2d 58 (1958), an action for a declaratory judgment as to deportability, one of the issues raised was whether the alien was entitled to appointment of counsel at government expense in a deportation proceeding. In the circumstances of the case, the court refused to decide that issue.

  In *Villanueva-Jurado v. INS,* 482 F.2d 886 (5th Cir. 1973), the court refused to pass on the right to counsel question since the alien had been asked whether he desired to be represented by an attorney and answered in the negative.

*Henriques v. INS,* 465 F.2d 119 (2d Cir. 1972), *cert. denied,* 410 U.S. 968, 93 S.Ct. 1452, 35 L.Ed.2d 703 (1973), held that an alien in a deportation proceeding did not have a right to the appointment of counsel at government expense. Language in the opinion as to the lack of prejudice arising from the absence of representation by counsel is dictum, which the 3rd Circuit viewed "with misgivings" in *Chlomos v. INS, supra,* 516 F.2d at 314. We have the same misgivings.

5. We note again that in so holding we do not reach or attempt to pass upon the contention that the aliens had the constitutional right to the appointment of counsel at government expense.