**Sun–Guei JIANG, Petitioner,**

v.

**Carl R. HOUSEMAN, District Director, Immigration and Naturalization Service, Respondent.**

**Civ. No. 3–94–1392.**

United States District Court, D. Minnesota, Third Division.

Nov. 16, 1995.

---

Steven J. Wells, Minneapolis, MN, for Petitioner.

Kristin A. Cabral, Attorney with the Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, DC, for Respondent.

## ORDER

DAVIS, District Judge.

The above-entitled matter comes before the Court upon Respondent's objections to the Report and Recommendation of the United States Magistrate Judge Raymond L. Erickson dated October 4, 1995. Respondent objects to that portion of the Report and Recommendation as to the Magistrate's determination of jurisdiction, that the BIA was represented by Respondent, and the remedy.

Pursuant to statute, the Court has conducted a *de novo* review of the record. 28 U.S.C. § 636(b)(1); Local Rule 72.1(c). Based on that review the Court ADOPTS the Report and Recommendation dated October 4, 1995, but takes into consideration Petitioner's request for specific instructions.

Accordingly, IT IS HEREBY ORDERED that Petitioner's request for a Writ of Habeas Corpus is GRANTED and that the matter is remanded to the Board of Immigration Affairs to reopen Petitioner's exclusion proceedings and remand Petitioner's case to an Immigration Judge to institute the appropriate administrative procedures to consider Petitioner's request for asylum and withholding of exclusion and deportation *de novo*.

## REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

At Duluth, in the District of Minnesota, this 4th day of October, 1995.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A) and (B), upon a Petition for a Writ of Habeas Corpus.

A Hearing on the Petition was conducted on April 27, 1995, at which time the Petitioner appeared by Steven J. Wells, Esq., and the Respondent appeared by Kristin A. Cabral, an attorney with the Office of Immigration Litigation, Civil Division, United States Department of Justice.

For reasons which follow, we recommend that the Writ be granted.

### II. *Factual and Procedural Background*

On June 2, 1993, the Petitioner entered the United States through San Francisco, California, having expended $26,000 to be smuggled into this country aboard a sea-going vessel. At that time, the Petitioner was a citizen and a native of China, and he was just shy of 17 years of age. Upon being apprehended, the Petitioner was charged, on June 5, 1993, with excludability for failing to possess a valid entry document, in violation of Title 8 U.S.C. § 1182(a)(7)(A)(i)(I), and he was placed in immigration detention as required by law. See, *Title 8 U.S.C. § 1225(b)*.

Thereafter, an Immigration Judge ("IJ") conducted a preliminary Hearing in Los Angeles, California, on June 15, 1993. Being only able to speak the Foo Chow dialect, an interpreter was present at this Hearing to assist the Petitioner. Upon being apprised of his right to retain legal counsel at his own expense, the Petitioner advised that he wanted to be so represented, and the Hearing was continued until June 23, 1993. During the course of that initial, preliminary Hearing, the Petitioner received a listing of legal aide organizations that were located in proximity to Los Angeles.

On June 23, 1993, the Petitioner appeared before the IJ, at the reconvened preliminary Hearing, but without the presence of counsel. In response to the IJ's questions concerning the Petitioner's efforts to obtain legal representation, the Petitioner advised that he had attempted to contact his family members in New York, in order that they could assist him in securing an attorney, but that those efforts had been unsuccessful. As a consequence, the Petitioner requested a continuance, which was granted, but the IJ advised the Petitioner that, if he were to appear at the next Hearing without counsel, he should expect to proceed without legal representation. The preliminary Hearing was then continued until June 28, 1993.

On June 28, 1993, the Petitioner again appeared without legal counsel. In response to the IJ's inquiry, about whether the Petitioner had been able to contact a family member, the Petitioner responded that he

had been successful in reaching a relative but that the relative was too far distant to assist in the retention of legal services. At that point, the following colloquy ensued:

Q. [By the IJ]: Well, I think I warned you about that, I, I believe. Well, now, did you try to use the legal aide list I gave you?

A. Ah, yes, it's true I had. But the thing—the trouble is that all of them speak English and they don't understand Mandarin.

Q. That is a difficulty, sir. I'm not surprised. Ah, there are not very many legal aide organization[s], let alone people here to spe—who spe—speak the Foo Chow language. Well, sir, are you ready then to proceed on your own today and represent yourself, since apparently you've tried all means and no one is able to help you?

A. Now I don't know what to do. Is it all right to ask for continuance?

Q. Well, you can ask, sir, but unless you give me a good reason, I'm not going to give you a continuance. If the legal aide list organizations haven't been able to help you and no family members can help you, what else are you going to do that you haven't done?

A. Ah, I was thinking about making calls again, personally, to see if there's anything I can do.

Q. Personally to who? That's what you've been doing so far, making personal phone calls. What else are you going to do?

A. I try ah, call the attorneys myself.

Q. What attorneys?

A. I just go look ah, I just go and look for them.

Q. Where? Where are you going to look?

A. I shall try more telephone calls.

Q. Well, sir, I've already given you ah, two weeks to try to get a tel—an attorney.

A. Well, because all the phone calls that I made have been phone calls to my relatives and I haven't—

Q. Well, sir, that's your problem. When I say that, sir, I didn't tell you to limit yourself to phone calls to your relatives. I

informed in fact very—much earlier, two weeks ago, to use the legal aide list or any other means you have. You're the one who chose to only use the telephone to make telephone calls to family instead of trying other means. That was the choice you made. So, sir, I see no purpose in con—giving you further continuance, you did not take full opportunity of the ones I gave you. So we're going to proceed today and you're going to be representing yourself. I find that you've been given, given reasonable cause and opportunity to get an attorney and you have not taken full opportunity. I'm not going to waste any further time.

Thereafter, the IJ advised the Petitioner that he had "the right to examine and object to any evidence presented against you; present evidence on your own behalf and to question any witnesses against you," and he inquired into the charges against the Petitioner, and any defenses that the Petitioner wished to claim.

In explaining his reason for leaving China, the Petitioner claimed that he was denied an opportunity to enroll in high school even though he was eligible to do so. Then the following exchange occurred:

Q. [By the IJ]: Well, sir, does the government want you for anything in China? Before you came here, was the government looking for you or wanted to put [you] in jail or anything like that?

A. Yes. If I go home I'll be punished. I'll be ah, fined.

Q. For what pur—why?

A. Because they say this is in violation of the law.

Q. What's in violation, sir. You have a difficulty being specific and I need you to be specific. In violation of what?

A. They say that this, smuggling.

Q. I see. Because you didn't get permission to leave?

A. Yes.

According to the Petitioner, he thought it was cheaper to be smuggled into this country since "it might cost [him] more than 30,000" to "have gone through the legal way."

In addition, the Petitioner testified that if he were returned to China, he felt that he would be beaten by the police for any infraction even though he had not previously been brought to a police department, and had not been subjected to a beating by police officers. Upon further inquiry, the Petitioner again denied that he was wanted by the police prior to leaving China. At that point, counsel for the Immigration and Naturalization Service ("INS") advised that he wanted to know if the Petitioner was afraid to return to China for any reason other than those that he had already expressed, and he made the following inquiry:

Q. [By the INS attorney]: Mr. Jiang, are you afraid to return to China at this time?

Q. [By the IJ]: But no, counsel. That's not the question you said you were going to ask. I already know why he doesn't want to return to China, cause he's afraid he's going to be fine and—for being smuggled out of the country. So, why don't you make it more specific.

A. [By the INS attorney]: Thank you, Your Honor.

Q. [By the IJ]: You said, you were going to be specific, if there were any other reasons. So, let's make sure we don't have any mis-communication [sic] ah, because this gentleman needs specific questions asked of him, because sometimes when I ask him specific questions, he gives general answers. So, if you have general answers, you're going to get general q— asked questions from him, you're going to get general answers. So, let's be specific.

A. [By the INS attorney]: Yes, Your Honor. Thank you.

Q. [By the INS attorney]: Mr. Jiang, is there any other reason for which you are afraid to return to China, other than you just already ah, stated?

A. Nothing.

Following the announcement of the IJ's decision that the Petitioner be excluded and deported, and an explanation of his right to appeal, the Petitioner expressed his intention to appeal. When counsel for the INS reserved the right to appeal from the IJ's decision, the IJ questioned the basis for such a reservation of rights, and the following, curious dialogue followed:

A. [By the INS attorney]: I decline to answer that question, Your Honor.

Q. [By the IJ]: No, counsel. I, I suppose you can decline, but counsel, I must warn you, the [frivolous] appeal rules are applied to the government just as much as it applies to an alien and I cannot comprehend why the government would be filing an appeal of my decision when that is exactly what you have requested, that the alien be excluded and deported from this country if not found admissible.

A. Your Honor, I'm not sure that the government will file ah, file an appeal, but upon review of the case ah, I would like to have the option to.

Q. Of course I must warn you about the regulations in regard to frivolous appeals. Certainly ah, there might be grounds for ah, disciplinary actions pursuant to 8 C.F.R. 292.3, for the government to take an appeal which is inappropriate and perhaps frivolous and improvident. So, I must warn you as I would warn an alien if there were no good grounds and you have stated, you have no grounds, or you can't even explain them to me. But you're reserving appeal as noted.

In his oral decision, the IJ explained his resolution of the legal representation issue as follows:

The alien did not, the Court believes, avail himself of the opportunity to get an attorney or representative, although afforded that opportunity, and, therefore, the Court deeming it appropriate proceeded with his case and required the alien to present his own case.

On the day following the rendition of this decision, the Petitioner, again appearing *pro se*, filed a Notice of Appeal which identified the following as the bases for his challenge to the IJ's decision:

I would like to apply for polical [sic] asylum in the United States and I have been denied a fair opportunity. I have not had effective legal assistance and I have been denied due process of law. I request a translator to assist me in preparing my application for polical [sic] asylum. I was

given a list of free legal service in English and Spanish, which I do not understand. It was [sic] not helped.

The Petitioner also requested a period of "90 days in order to file [a] written argument" in support of his appeal. In a Notice dated July 26, 1993, the Petitioner was advised that he would have until August 5, 1993, to submit a brief in support of his appeal.

By Order dated August 25, 1993, the Board of Immigration Appeals ("BIA") "summarily dismissed" the Petitioner's appeal because he failed to either file a brief or statement in support of his appeal, or an explanation for his failure to do so. On October 15, 1993, the INS moved the Petitioner to Minneapolis, Minnesota, and, on December 15, 1993, the Petitioner was placed with a foster family in St. Paul, Minnesota. Subsequently, in March of 1994, the Minnesota Advocates for Human Rights accepted the Petitioner into its Refugee and Asylum Project and secured *pro bono* legal counsel to represent his interests.

Now being represented by legal counsel, on August 15, 1994, the Petitioner filed a Motion to Reopen the Exclusion Hearing with the IJ who had presided over that Hearing. In this Motion, the Petitioner contested the IJ's refusal to grant a further continuance, so as to enable the Petitioner to obtain legal counsel and, for the first time, the Petitioner expressed his claim that, in China, he faced a groundless homicide charge as a form of retaliation for his political acts in challenging official corruption. According to the Petitioner, his attempts to enter high school were frustrated by a local governmental leader, who had substituted the Petitioner's qualifications for those of his son, in order to allow his son to matriculate. Once the Petitioner contested these acts, the local official initiated a Warrant for the Petitioner's arrest on unfounded murder charges. The Petitioner contended that his failure to present this information at his Exclusion Hearing was a result of his unrepresented status, his youth, his inability to understand those legal proceedings, and an institutionalized fear of governmental officials.

By Order dated September 2, 1994, the IJ denied the Petitioner's Motion for the reason that any jurisdiction over that Motion would rest with the BIA. Accordingly, the IJ transferred ferred the Motions to the BIA which, by Order dated October 18, 1994, granted the Motion to Reopen, and then rejected the Petitioner's arguments on the merits. With respect to the Petitioner's claim, that he had been denied due process by the IJ's failure to grant him a further continuance in order to secure legal counsel, the BIA concluded that no error occurred because the Petitioner could show no prejudice that was occasioned by the absence of counsel. According to the BIA, the Petitioner was obligated to "show that, except for the immigration judge's refusal to grant a further continuance for purposes of securing legal representation, he would have applied for and been granted asylum and withholding relief." Similarly, the BIA rejected the Petitioner's argument, that the IJ erred in failing to advise him of his right to seek asylum and a withholding of deportation, as is mandated by 8 C.F.R. § 236.3(a), because the Petitioner failed to demonstrate "persecution," should he be deported to China, since he only asserted that he would be subjected to an unfounded "prosecution" upon his return. In the BIA's view, under such circumstances, the IJ was "under no obligation to advise him of his right to apply for asylum and withholding relief or to provide him with an application for this purpose."

According to the Record before us, counsel for the Petitioner received a copy of the BIA's Order on October 21, 1994, and, on that same date, the Petitioner personally attended a "case review," that was instituted by the Respondent. At the close of that case review, the Petitioner was transported from Minneapolis, Minnesota, to the County Jail of Chippewa County, Wisconsin, some 70 miles distant from Minneapolis. Subsequently, the Petitioner filed a Motion for a Temporary Restraining Order which was to be heard on October 25, 1994. Prior to the scheduled Hearing on that Motion, the parties reached an agreement which allowed the Petitioner, subject to a $3,000.00 exclusion bond, to remain with his foster family in St. Paul, Minnesota, during the pendency of these Habeas Corpus proceedings.

### III. *Discussion*

■ In challenging the legitimacy of his Exclusion Hearing, the Petitioner contends that he was denied due process of law in the following respects:[1]

1. The IJ's refusal to grant him a further continuance effectively denied him his statutory right to legal counsel.

2. The IJ's failure to affirmatively advise him of his right to seek asylum, pursuant to the provisions of 8 C.F.R. § 236.3(a), deprived him of the opportunity to demonstrate that his return to China could cause him harm.

3. The BIA's refusal to remand these proceedings to the IJ, following its grant of the Petitioner's Motion to Reopen, violated his statutory right to a considered factfinding.

We address each of these contentions in turn.

### A. *The IJ's Denial of the Petitioner's Request for a Further Continuance.*

■ 1. *Standard of Review.* In the conduct of Hearings before the IJ, Congress has mandated that such proceedings "shall be in accordance with such regulations, not inconsistent with [Title 8 U.S.C. § 1101 *et seq.*], as the Attorney General shall prescribe," including, among others, the following:

(1) the alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held,

(2) the alien shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose,

(3) the alien shall have a reasonable opportunity to examine the evidence against him, to present evidence on his own behalf, and to cross-examine witnesses presented by the Government. * * *.

*Title 8 U.S.C. § 1252(b)*, and see also, *Title 8 U.S.C. § 1226(a)*. Pursuant to this mandate, the Attorney General has promulgated regu-

---

1. The propriety of the Petitioner's resort to Habeas relief has not been contested, as challenges to deportation proceedings are cognizable under the Federal Habeas Statute. See, *Velazquez v. INS*, 876 F.Supp. 1071, 1074 (D.Minn.1995), quoting *Title 8 U.S.C. § 1105a(a)(10)* ("any alien held in custody pursuant to an order of deportation may obtain judicial relief thereof by habeas corpus proceedings"). As the Court noted in *Velazquez*, "[w]here an order of deportation is outstanding, as in the present case, the 'custody' requirement for habeas corpus jurisdiction is satisfied." *Id.* at 1074 n. 2, citing *Ijoma v. INS*, 854 F.Supp. 612, 616 n. 10 (D.Neb.1993). Nevertheless, the Respondent has argued that we should decline to review the Petitioner's claim because he has failed to exhaust his administrative remedies before the INS. We reject the argument as unsound.

As we have noted, the Petitioner contends that the Respondent erred in treating his Motion to Reopen as an appeal on the merits of the IJ's decision which was summarily dismissible. According to the Respondent, however, we are without jurisdiction to address this issue, as the Petitioner did not request the BIA to reconsider this asserted procedural anomaly which the Petitioner now brings to our attention. While we agree with the Respondent, that Title 8 U.S.C. § 1105a(c), requires an exhaustion of administrative remedies before judicial relief may be invoked, we disagree with his assertion that, by this provision, Congress intended to erect an interminably revolving door through which a proper resort to judicial review could be unendingly forestalled. We suspect that the Respondent could contend, in most every instance, that an issue on appeal was not perceived by the BIA in the same light as it had been cast before the reviewing Court, but we seriously doubt that such a misapprehension on the Respondent's part would warrant a resubmittal of that issue for the BIA's reconsideration.

Although relying upon the Court's decision in *Valadez–Salas v. INS*, 721 F.2d 251, 252 (8th Cir.1983), as precluding our review of the Petitioner's claim of procedural error, we find no support in that decision for the argument that the Respondent advances. In *Valadez–Salas*, our Court of Appeals took pains to note that, under the circumstances presented there, the alien's substantive claim had not been raised before the IJ or the BIA and, therefore, there was no discretionary exercise of the Attorney General's authority for the Court to review. Here, however, the BIA elected to address the Petitioner's Motion to Reopen in a particular way, even though alternative means of addressing that Motion were clearly available. Given the fact that the BIA, as represented by this Respondent, chose the means of resolving the claimed procedural error, and admits of no mistake in the selection that was made, we see no cause for a dismissal on exhaustion grounds. See, e.g., *Margalli–Olvera v. INS*, 43 F.3d 345, 350 n. 5 (8th Cir.1994) (issues raised on appeal are reviewable where facts attendant to that review were before the INS, and were the focus of the INS's attention).

lations which provide, in particular, as follows:

> The Immigration Judge may grant a motion for continuance for good cause shown.

*8 C.F.R. § 3.29.*

\* \* \* \* \* \*

> After the commencement of the hearing, the Immigration Judge may grant a reasonable adjournment either at his or her own instance or, for good cause shown, upon application by the respondent or the Service.

*8 C.F.R. § 242.13.*

\* \* \* \* \* \*

> The respondent may be represented at the hearing by an attorney or other representative qualified under part 292 of this chapter.

*8 C.F.R. § 242.10.*[2]

When addressing the propriety of a continuance, in order to permit the alien to secure legal counsel, the Courts have adopted the well-settled rule that the Sixth Amendment right to counsel is inapplicable as no criminal proceeding is involved. Rather, the Court's have concluded that the Fifth Amendment right to due process of law is implicated in the conduct of such proceedings. See, *Baires v. INS,* 856 F.2d 89, 90 (9th Cir.1988); *Rios–Berrios v. INS,* 776 F.2d 859, 862 (9th Cir.1985); cf., *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1038–39, 104 S.Ct. 3479, 3483–84, 82 L.Ed.2d 778 (1984); *Campos v. Nail,* 43 F.3d 1285, 1289 (9th Cir.1994); *Castaneda–Suarez v. INS,* 993 F.2d 142, 144 (7th Cir. 1993); *Ogbemudia v. INS,* 988 F.2d 595, 598 (5th Cir.1993); *Montilla v. INS,* 926 F.2d 162, 166 (2nd Cir.1991); *Michelson v. INS,* 897 F.2d 465, 467 (10th Cir.1990); *Figeroa v. INS,* 886 F.2d 76, 78 (4th Cir.1989); *Lozada v. INS,* 857 F.2d 10, 13 (1st Cir.1988). In this respect, the Courts have generally recognized an alien's right to counsel as being "fundamental and have warned the INS not to treat it casually," since the "right must be respected in substance as well as in name." *Baires v. INS,* supra at 91 n. 2; see also, *Lozada v. INS,* supra at 13; *United States v. Saucedo–Velasquez,* 843 F.2d 832, 834–35 n. 2 (5th Cir.1988); *Cobourne v. INS,* 779 F.2d 1564, 1566 (11th Cir.1986); *Castaneda–Delgado v. INS,* 525 F.2d 1295, 1300 (7th Cir. 1975).

In the final analysis, however, there is no "bright-line rule" which separates the proper grant of a continuance from an abusive denial, since each request for a continuance "must be resolved on a case-by-case basis according to the facts and circumstances of each case." *Baires v. INS,* supra at 91, citing *Rios–Berrios v. INS,* supra at 862; see also, *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964) ("There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process," since the "answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."). While every denial of a continuance does not violate due process, even where the denial forces the party to defend himself without counsel, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Ungar v. Sarafite,* supra at 589, 84 S.Ct. at 849.

2. *Legal Analysis.* Although we view, with deference, the IJ's decision to deny the Petitioner a third continuance, we have great difficulty in squaring that denial with common notions of fundamental fairness. As was the IJ, we are confronted with an alien who was 16 years of age; who was wholly unfamiliar with the legal processes in which he was engaged; who was unable to speak or understand the English language; who was without a guardian, relative, or close personal friend to assist him in the search for legal counsel; who was in detention at all

---

**2.** In this same respect, Title 8 U.S.C. § 1362, provides as follows:

> In any exclusion or deportation proceedings before a special inquiry officer and in any appeal proceedings before the Attorney General from any such exclusion or deportation proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he should choose.

See also, *Title 8 U.S.C. § 1252(b).*

relevant times and, therefore, unable to freely canvass the community for legal representation; and who was provided a listing of legal aide organizations that was written in a language that he could not understand. There is no suggestion in this Record, let alone a showing, that any interpreter assisted the Petitioner in his efforts to communicate with legal counsel and, in fact, the Record reveals the IJ's express recognition that the language, which the Petitioner spoke, would be an unavoidably severe impediment upon his ability to communicate with attorneys in the local community.

We recognize, as the Respondent has emphasized, that two prior continuances were granted. We think, however, that, given the authorities presented by both parties, the critical factor is not the quantity of continuances that have been granted, but the adequacy of the postponement afforded. In practical effect, an inadequate continuance is not to be distinguished from no continuance at all. Here, a total of eight workdays were accorded the Petitioner to overcome his unfamiliarity with a legal process that was foreign to him, his inability to freely communicate, his youth and inexperience, and his confined status. In our considered view, the postponement allowed by the IJ was inadequate, on the basis of the facts before him, and constituted a deprivation of the Petitioner's right to due process. While, thankfully, the facts that we confront have not found frequent replication in the reported decisions, those cases which have addressed paralleling circumstances satisfy us that our appraisal of the Petitioner's denial of due process is well within the norm.

As but one example, in *Molaire v. Smith*, 743 F.Supp. 839 (S.D.Fla.1990), the Court addressed the extent to which an alien had knowingly and intelligently waived his right to counsel during the course of his Exclusion Hearing. Given the facts of that case, which are remarkably akin to those we face, the Court concluded that the alien had not knowingly relinquished his right to legal representation. In the words of the Court:

> Moreover, the fact that Petitioner: was only sixteen years of age at the time of the hearing; did not speak English; was unfamiliar with our legal system; was confined at [a detention center], much of the time in isolation; and was not apprised of the nature and purpose of the hearing; combined with the fact that exclusion proceedings were swiftly instituted against him, negates any possibility that he intelligently and knowingly waived his right to counsel.

*Id.* at 845.

Although we find that the IJ did initiate the Petitioner's first Hearing with a general, albeit terse, explanation that the Hearing was intended to determine whether the Petitioner would be legally permitted to enter this country or would be compelled to leave it, we have no reason to believe that such an explanation cures the deprivation of legal assistance that the rulings of the IJ imposed. More importantly, unlike the scenario in *Molaire*, here the Petitioner did not waive his right to counsel, for his access to legal representation was effectively subverted by the IJ's refusal to afford him a meaningful opportunity to secure informed legal advices as to how he should proceed.[3]

■ We are mindful of the Respondent's contention that, under its decision in *Matter of Santos*, 19 I. & N. Dec. 105, 1984 WL 48592 (B.I.A.1984), a denial of legal represen-

---

3. We decline to catalogue the diverse factual settings upon which one Court or another has premised a decision to reverse and remand based upon a denial of an alien's right to counsel. Suffice it to say that, notwithstanding our extensive legal research and that conducted by the parties, we find the circumstances of *Molaire*, including the alien's 2–week opportunity to seek legal counsel, to most closely mirror those presented here. We would be remiss, however, if we did not observe that far less pressing circumstances, than those advanced here, have been found to constitute a denial of due process. See, e.g., *Rios–Berrios v. INS*, 776 F.2d 859, 861 (9th Cir.1985) (29–year old who was unable to speak English, and who waived right to counsel); *Montilla v. INS*, 926 F.2d 162, 164 (2nd Cir.1991) (44–year old who resided in the United States for 17 years prior to Deportation Hearing, and who was granted a 16–day continuance of the Hearing); *Baires v. INS*, 856 F.2d 89 (9th Cir.1988); and cf., *Ogbemudia v. INS*, 988 F.2d 595, 599 (5th Cir.1993) (no denial of due process found where alien was educated in America, had first hand knowledge of deportation proceedings, had outside help from family and friends, and had the benefit of a month-long continuance to obtain legal assistance).

tation will be treated as harmless error unless the deprival of counsel was fundamentally unfair and resulted in prejudice to the alien. We find little to commend the adoption of such a rule in this Circuit, where the issue remains one of first impression. The need to demonstrate prejudice, however, in order to claim a denial of due process, has been rejected in each of the Circuits that have addressed the question that has been presented here. See, *Montilla v. INS*, supra at 168; *Castaneda–Delgado*, 525 F.2d 1295, 1300 (7th Cir.1975); *Chlomos v. INS*, 516 F.2d 310, 314 (3d Cir.1975); *Yiu Fong Cheung v. INS*, 418 F.2d 460, 464 (D.C.Cir. 1969). Indeed, while leaving the issue open, the Ninth Circuit, in *Rios–Berrios v. INS*, supra at 863 n. *, took pains to observe that "*Santos* is not persuasive" authority in demanding a showing of prejudice arising from the deprivation of legal representation. See also, *Baires v. INS*, supra at 91 n. 3.

■ In sum, where—as here—the issue is not the effectiveness of retained counsel, but the failure of the IJ to provide a reasonable opportunity for the retention of counsel, we are satisfied that our Court of Appeals would join its predecessor Courts on this issue, and would not require a particularized showing of prejudice. In so concluding, we are persuaded that, in directing the availability of counsel so as to represent the interests of aliens in the course of Exclusion Hearings, Congress intended that such access should be real and not imaginary or ephemeral. The right to legal advice would be hollow, indeed, if those needing those advices were required to surmount herculean obstacles such as translating a foreign language, overcoming one's own naivete, inexperience or youth, or subduing an inelasticity of time which would preclude those who are constrained, by the circumstance of imprisonment, from being able to effectively solicit legal representation. To accord validity to the IJ's denial of a

reasonable continuance in this matter would be to relegate the Petitioner's right to counsel to "an empty formality," which we are not prepared to do.[4] Finding error in this regard, we recommend that the Petition for a Writ of Habeas Corpus be granted.

B. *The IJ's Failure to Advise the Petitioner Concerning His Opportunity to Seek Asylum.*

■ Relying upon what is, at best, a semantical argument, the Respondent contends that the IJ did not err in failing to apprise the Petitioner of his right to seek asylum in this country, as required by 8 C.F.R. § 236.3(a), which reads as follows:

> If the alien expresses fear of persecution or harm upon return to his or her country of origin or to a country to which the alien may be deported after a determination of excludability from the United States pursuant to part 227 of this chapter, and the alien has not been referred to the immigration judge by an asylum officer in accordance with § 208.14(b) of this chapter, the immigration judge shall:
>
> (1) Advise the alien that he may apply for asylum in the United States or withholding of deportation to that other country; and
>
> (2) Make available the appropriate application forms.

In an argument that turns the language of this regulation on its ear, the Respondent argues that the Petitioner's fear of retribution upon his return to China, his interest in pursuing his education in this country, and his apprehensions about facing falsified murder charges—should he be deported—were not cognizable bases for asylum under Section 236.3(a). We find the Respondent's arguments to be misinformed.

---

4. Even if we were to decide, that a showing of prejudice was essential to a denial of due process, we would conclude that the Petitioner has made such a showing, particularly insofar as his right to counsel argument has been augmented by his remaining challenges to the BIA's final decision. As the Court noted in *Rios–Berrios v. INS*, supra at 863, we are convinced that the Petitioner's interests in demonstrating an entitle-

ment to asylum "will be more advantageously presented by retained counsel," and we are persuaded that the absence of counsel substantially prejudiced the Petitioner's ability to present evidence in his own favor at the Exclusion Hearing, which clearly affected the outcome of those proceedings. *Baires v. INS*, supra at 93. Accordingly, we now turn to the other issues before us.

Whether a fear of reprisal should constitute "persecution" or an instance of maligned "prosecution," is a fact-dependent inquiry. Apparently, appreciating the fact-specific nature of such a question, the Respondent applauds the BIA's discrediting of the Petitioner's concerns, to the extent contained in his administrative appeal, as being wholly fictionalized. We have substantial doubt that, in the first instance, the function of the BIA on appeal is to render credibility determinations on matters outside of the administrative record.[5] Such believability judgments are susceptible to an opportunistic deployment where, as here, the BIA has no factual or legal basis to adjudge the contentions as believable or not. We, therefore, are not persuaded that the Petitioner's concern of persecution, should he be deported to China, was "highly questionable," since we have no more reliable a basis to measure the truth of his assertions, than did the BIA.

Moreover, on basis of the record before the BIA—and now before us—we have great difficulty in inferring, as the BIA has inferred, that the Petitioner raised no more than a fear of prosecution upon his deportation to China. Notwithstanding the Respondent's contention, that any retribution sustained by the Petitioner would be attributable to a personal vendetta by a corrupt public official, we find no authority for the proposition that a proffer of asylum requires some impersonal, perfunctory exercise of governmental authority, and the Respondent draws none to our attention. Quite simply, on the Record before us, we are unable to conclude that the Petitioner's concern for sanctuary was ill-conceived, fanciful, or irrelevant to a grant of asylum.[6] In our considered view, the BIA's doctrinaire resolution of such a factually idiosyncratic issue escapes any cogent rationale. Accordingly, we think that a grant of the Petition will appropriately afford the Petitioner with an opportunity to properly present his request for asylum, subject to the close examination of the IJ and, thereby, to effectuate the clear intent of Section 236.3(a) that such requests for asylum be thoroughly explored and carefully considered.

### C. *The BIA's Refusal to Remand for Additional Factfinding.*

■ Lastly, we consider the Petitioner's argument that the BIA erred in granting his Motion to Reopen, only to dismiss his appeal summarily. In this respect, 8 C.F.R. § 3.8(d) states in full:

Rulings upon motions to reopen or motions to reconsider shall be by written order. If the order directs a reopening, the record shall be returned to the officer of the Service having administrative jurisdiction over the place where the reopened proceedings are to be conducted. If the motion to reconsider is granted, the decision upon such reconsideration shall affirm, modify, or reverse the original decision made in the case.

Emphasizing that the regulation employs a "shall" to achieve the Service's intent that the granting of a reopening requires a return of the record to an IJ, the Petitioner contends that the BIA merely used the reopening to facilely avert the substance of the Petitioner's claimed denial of due process.

In turn, the Respondent maintains that, in granting the Motion to Reopen, "the BIA vacated its decision of petitioner's first appeal (i.e. the summary dismissal), [and] the posture of the case became as if petitioner's appeal was never decided." The Respondent then argues:

Because the vacating of the first BIA decision essentially meant that the Board had yet to make a decision, the Board effectively granted petitioner's "motion to reopen" because [the Petitioner's] immigration pro-

---

**5.** Notwithstanding the urgings of the Respondent, we are unable to conclude that the inconsistencies between the Petitioner's contentions on administrative review, and those he initially presented to the IJ, are attributable to anything more than his befuddlement as an unrepresented, immature, and uninformed stranger to a foreign legal process. To draw a more definitive inference from the record before us requires a degree of conclusive presumption that we are loathe to haplessly employ.

**6.** Of course, we do not intimate any view as to the validity of the concerns that the Petitioner has voiced in support of his request for asylum. We merely conclude that those concerns should not have been rejected peremptorily.

ceedings had never been closed in the first place, and thus the BIA proceeded to consider his claims as a motion to remand. While inventive, the argument is not persuasive.

In support of his position, the Respondent relies upon that portion of the Court's decision in *Rodriguez v. INS*, 841 F.2d 865, 867 (9th Cir.1987), which allowed the INS to recast the alien's Motion to Reopen as a Motion to Remand where an appeal was pending from the very decision of the BIA which the alien sought to reopen. Whatever may be the propriety of such a recasting of Motions, we are not confronted with the same issue here since, in *Rodriguez*, the BIA denied the Motion to Reopen/Remand and dismissed the alien's appeal. Quite to the contrary, here the BIA granted the Motion to Reopen, and all parties agree that the BIA had the discretion to grant that relief.[7] Having granted that Motion, we find nothing discretionary or elective in Section 3.8(d)—for, according to the express language of that regulation, the BIA is obligated to return the record "to the officer of the Service having administrative jurisdiction over the place where the reopened proceedings are to be conducted." In other words, being unable to render findings of fact on its own accord, the BIA must remand the administrative record for further factual development. As the Court observed in *Sewak v. INS*, 900 F.2d 667, 673 (3rd Cir.1990):

The BIA reviews findings made on the record in the immigration court, see 8 C.F.R. § 3.5 (1989), and thus it is generally powerless to take evidence in the first instance concerning facts upon which the opposing parties disagree.

By a footnote, the Court went on to further explain itself:

One instance when the BIA is allowed to consider new evidence is in a motion for reopening before the BIA. See 8 C.F.R. § 3.8(a) (1989). If such a reopening is granted, the case is then remanded to the immigration court so that it may conduct the reopened proceedings. See id. § 3.8(d).

Notwithstanding its inability "to take evidence in the first instance," here the BIA has usurped that function in the guise of again discharging an appeal that had earlier been dismissed. While, undoubtedly, this was an expedient course for the BIA to follow, the Petitioner's right to a considered factfinding was necessarily vitiated and, in that respect, he was denied the process to which he was due.[8]

In sum, by compounding its errors in this matter, we conclude that, even if the Petitioner were required, but unable to demonstrate prejudice attendant to his denial of legal representation, such prejudice is presented by the IJ's failure to advise the Petitioner of his right to seek asylum, and by the BIA's improper usurpation of the Petitioner's right to a factfinding by a properly constituted finder of fact. Accordingly, we recommend that the Petitioner's request for relief be granted and that a Writ of Habeas Corpus should issue that would require the Respondent to implement its decision to return the

---

**7.** The bases for a granting of a Motion to Reopen were recently summarized in *Dulane v. INS*, 46 F.3d 988, 994 (10th Cir.1995) as follows:

There are three independent grounds upon which a motion to reopen may be denied. INS v. Abudu, 485 U.S. 94, 104–05, 108 S.Ct. 904, 911–12, 99 L.Ed.2d 90 (1988). First the BIA may find the alien has failed to establish a prima facie case for the underlying substantive relief. Second, the BIA may conclude that the alien has failed to present previously unavailable, material evidence. Third, where the alien is requesting discretionary relief, such as suspension of deportation, "the BIA may leap ahead, as it were, over the two threshold concerns (prima facie case and new evidence/reasonable explanation), and simply determine that even if they were met, the [alien] would

not be entitled to the discretionary grant of relief."

Here, of course, the BIA granted the Motion to Reopen, it did not consider the Motion and then deny it on discretionary grounds.

**8.** We understand the Respondent to advance a "no harm, no foul" type of argument since, arguably, the BIA could have reached the same result by a denial of the Petitioner's Motion to Reopen which would, ineluctably, leave in place the BIA's earlier denial of the Petitioner's appeal. For whatever reason, the BIA elected to reopen the Petitioner's case and we need not accede to the BIA's attempt to gloss over the Petitioner's due process rights merely because the BIA exercised its discretion in a way that it may now regard as improvident.

administrative record for additional proceedings relating to the Petitioner's request for asylum.

WHEREFORE, It is—

RECOMMENDED:

That the Petitioner's request for a Writ of Habeas Corpus be granted and that the Respondent be directed to institute, forthwith, the appropriate administrative proceedings to consider the Petitioner's request for asylum.

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D.Minn. LR1.1(f), and D.Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than October 17, 1995,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than October 17, 1995,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made.